In the Matter of the EXTRADITION OF Jorge Gustavo KRAISELBURD.

UNITED STATES of America, Plaintiff-Appellee,

v.

Jorge Gustavo KRAISELBURD, Defendant-Appellant.

No. 85–6156.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 7, 1986.

Decided April 14, 1986.

John J.E. Markham, II, Asst. U.S. Atty., argued, Peter K. Nunez, U.S. Atty., John J.E. Markham, II, Asst. U.S. Atty., on the brief, San Diego, Cal., for plaintiff-appellee.

Kenneth Noel, Federal Defenders, San Diego, Cal., for defendant-appellant.

Before KENNEDY and SCHROEDER, Circuit Judges, and ORRICK,* District Judge.

* William H. Orrick, Jr., District Judge for the Northern District of California, sitting by desig-

KENNEDY, Circuit Judge:

This is an appeal from the district court's denial of a habeas corpus petition sought after a magistrate ordered extradition to Argentina. On or about April 26, 1976, Alicia Lia Solana and her mother Sila Emer Peralta Bergna de Solana were found murdered in their home in Bahia Blanca, Argentina. The investigation revealed that appellant Jorge Gustavo Kraiselburd had threatened the victims because he was angry that Alicia Solana had spurned him. The investigation also revealed that certain slogans written on the walls of the house in spray paint and felt pen were in his handwriting. Officials in Argentina issued an arrest warrant on June 29, 1976 charging appellant with the murder of the two women. Argentinian authorities formally requested Kraiselburd's extradition from the United States on March 5, 1981. The United States commenced extradition proceedings on June 27, 1984. On April 16, 1985, the magistrate issued an order certifying Kraiselburd's extraditability pursuant to 18 U.S.C. § 3184. Kraiselburd sought review of the magistrate's order by way of a petition for habeas corpus. *See Caplan v. Vokes,* 649 F.2d 1336, 1340 (9th Cir.1981) (no direct appeal from order certifying extraditability; review available only by way of habeas corpus) (citing *Collins v. Miller,* 252 U.S. 364, 369, 40 S.Ct. 347, 349, 64 L.Ed. 616 (1920)). The district court denied the petition. We affirm.

Kraiselburd first contends that Argentina's request for his extradition was not accompanied by an arrest warrant, in violation of the governing extradition treaty. Treaty of Extradition, Jan. 21, 1972, United States-Argentina, 23 U.S.T. 3501, T.I.A.S. No. 7510 ("Extradition Treaty" or "the Treaty"). Under the Treaty, the extradition request must include an arrest warrant. Extradition Treaty, art. 11(3). In case of urgency, the Treaty permits the requesting country to seek the fugitive's provisional arrest. *Id.* art. 12. A request

nation.

for provisional arrest need only be accompanied by a declaration that an arrest warrant exists; it need not actually include a warrant. *Id.* Where the provisional arrest procedure is invoked, the requesting country must submit an arrest warrant within forty-five days of the request for provisional arrest. *Id.*

Kraiselburd's contention is that the pertinent document that Argentina submitted with its request for Kraiselburd's extradition is not an arrest warrant, but merely a request for his provisional arrest. He argues that because no further documents were submitted by Argentina, the extradition request is invalid under the Treaty. We disagree.

■ The document at issue is written in Spanish, and is dated June 29, 1976, almost five years before Argentina sought Kraiselburd's extradition. It is directed to Argentinian police authorities, not to officials of the United States. The document describes at length the facts surrounding the death of the two victims, and the evidence linking Kraiselburd to the crime. It is signed by a judge, and in the penultimate paragraph orders the police authorities to arrest Kraiselburd, pursuant to certain specified provisions of the Constitution and Code of Criminal Procedure of Argentina. Kraiselburd ignores the bulk of the document, focusing instead on what he views as the crucial fact that the document explicitly refers to Article 12 of the Treaty. The reference to the Treaty, however, occurs only in the final paragraph, immediately following a statement that Kraiselburd is known to be living in the United States. The express purpose of the final paragraph of the document is to authorize the pertinent Argentinian officials to pursue Kraiselburd's provisional arrest under the Treaty. Kraiselburd's argument, that the document's mention of the Treaty renders it a request for his provisional arrest rather than a warrant authorizing his arrest, is meritless. We conclude that Argentina properly submitted a warrant for Kraiselburd's arrest, in compliance with Article 11(3) of the Treaty.

Kraiselburd next argues his extradition is time-barred. The Treaty forbids extradition if prosecution is barred "by lapse of time according to the laws of [either Argentina or the United States]." Extradition Treaty, art. 7(1)(c). Kraiselburd does not claim his extradition is barred by the statute of limitations of Argentina. He relies on American law, citing the five-year statute of limitations for noncapital offenses provided by 18 U.S.C. § 3282. His argument that his extradition is barred under section 3282 rests on two contentions. First, he asserts that because murder is not punishable by death under either the law of Argentina or the federal law of the United States, the crimes with which he is charged cannot be termed capital offenses. He argues the provision that precludes application of the statute of limitations to capital offenses, 18 U.S.C. § 3281, is inapposite. Second, Kraiselburd argues that the five-year statute of limitations was not satisfied in this case. Even though Argentina both issued a warrant for his arrest and formally requested his extradition within five years of the killings, Kraiselburd contends that the failure of the United States to initiate extradition proceedings against him within the five-year period violates the statute of limitations.

■ We need not address the latter contention because we find that the former is foreclosed by our recent opinion in *Quinn v. Robinson*, 783 F.2d 776 (9th Cir.1986). In *Quinn*, a case that deals for the most part with the political offense exception to extradition, the United Kingdom sought Quinn's extradition for murder and conspiracy. *Id.* at 781. The United Kingdom did not request Quinn's extradition until approximately six and one half years after the murder occurred. *Id.* at 783–84 (murder took place February 26, 1975; extradition requested November 4, 1981). Though we remanded on the question whether the conspiracy charge was time-barred under section 3282, *id.* at 816–18, we held that Quinn could be extradited on the murder charge, *id.* at 818, as "the United States [does not] impose[ ] a statute of limitations

on murder charges," *id.* at 816. Necessary therefore to our holding in *Quinn* was the conclusion that at least for purposes of international extradition from the United States, murder is a capital offense falling under 18 U.S.C. § 3281 rather than 18 U.S.C. § 3282. We follow *Quinn*, and hold that Kraiselburd's extradition for murder is not barred by the statute of limitations.

Kraiselburd argues that even if his extradition is not barred by the statute of limitations, Argentina violated his speedy trial and due process rights under the United States Constitution by not requesting his extradition until March 1981, almost five years after the murders occurred. He concedes that the Constitution does not of its own force impose on foreign governments the obligation to act speedily in seeking extradition of a fugitive from the United States. *See, e.g., Kamrin v. United States*, 725 F.2d 1225, 1227–28 (9th Cir.) (holding due process protections not applicable where Australia sought extradition many years after crime occurred), *cert. denied,* —— U.S.——, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984). He contends, however, that the Treaty provision granting fugitives "the right to use such remedies and recourses as are provided by the law of the requested Party," Extradition Treaty, art. 10, in effect imposes upon Argentina the duty to comply with the speedy trial and due process clauses of the United States Constitution.

■ We considered in *Kamrin* the effect of the "remedies and recourses" provision in the context of a fugitive's claim that due process barred his extradition because of lapse of time. *Kamrin*, 725 F.2d at 1227–28. In *Kamrin* Australia sought Kamrin's extradition on charges of conspiracy to defraud. *Id.* at 1226. The conspiracy ended in 1974, but Kamrin was not charged with a crime until 1980. *Id.* The United States initiated extradition proceedings in 1982. *Id.* at 1227. As in the instant case, the statute of limitations made applicable by the governing treaty did not bar extradition. *Id.* Kamrin argued nevertheless that his treaty right "to use such remedies

and recourses as are provided by the law of the requested party" entitled him to the constitutional protections that "underl[y] United States statutes of limitations." *Id.* We held, despite the "remedies and recourses" provision in the treaty, that Australia's only obligation was to comply with the applicable statute of limitations. *Id.* at 1227–28. Thus, Kamrin was not entitled to invoke the constitutional protections that the United States Constitution affords defendants in American criminal prosecutions. *Id.* at 1228. Here, as in *Kamrin*, Kraiselburd's extradition is not barred by the statute of limitations. *Kamrin* therefore compels us to reject Kraiselburd's contention that the Treaty provision on which he relies entitles him to additional protections under the Constitution.

■ That the United States waited until June 1984, more than three years after Argentina submitted its request, to initiate Kraiselburd's extradition does not strengthen his argument that his extradition is time-barred under the Constitution. Even assuming Kraiselburd is correct to the extent he suggests constitutional concerns may be implicated when the United States does not act expeditiously in initiating extradition proceedings, *but cf. In re Extradition of Burt*, 737 F.2d 1477, 1486–87 (7th Cir.1984), we find there was no constitutional violation in this case. Kraiselburd ignores the fact that he was incarcerated in the United States from approximately June 1981 to November 1985 pursuant to a conviction for mail fraud. Both countries are specifically allowed under the Treaty to defer surrender of a fugitive convicted of a crime until the fugitive's prison term expires. Extradition Treaty, art. 9. Therefore, in determining not to proceed with Kraiselburd's extradition until near the end of his sentence, the United States was within its rights under the Treaty. Of course, that the government's delay fell within a specific Treaty provision is not determinative. More important is the absence of prejudice in this case. Kraiselburd appears to suggest that we scrutinize the government's conduct under the frame-

work of *United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). In *Lovasco* the Supreme Court ruled that under certain circumstances preindictment delay by the government in a criminal prosecution could give rise to a due process violation. *Id.* at 788–97, 97 S.Ct. at 2047–52. Though the analogy between this case, an extradition proceeding, and *Lovasco,* a federal criminal prosecution, is not a compelling one, *see Burt,* 737 F.2d at 1486, we find instructive *Lovasco* 's reiteration that a due process claim cannot prevail absent a showing of actual prejudice. *Lovasco,* 431 U.S. at 790, 97 S.Ct. at 2048. Kraiselburd does not allege and the record before us does not reveal any prejudice from the government's delay. Absent prejudice we conclude there is no due process violation.

Kraiselburd also challenges the magistrate's denial of his motion for discovery. Kraiselburd moved at the extradition hearing that the magistrate order Argentina to produce its entire file on the Solana killings. The magistrate rejected this blanket discovery request, but ordered Argentina to produce the following documents to substantiate the allegations in the arrest warrant: (1) all documents relating to the conclusion that the handwriting on the walls was appellant's; (2) any threatening letters written by appellant; and (3) any witness statements alleging that appellant had threatened either victim. Argentina complied with the magistrate's order, submitting reports by three handwriting experts, and a threatening letter to Alicia Solana attributed to appellant. Argentina also produced a number of statements, including statements by Alicia's father, brother, and boyfriend, as well as letters written by Alicia herself, all reporting threats to Alicia made by appellant.

■ Kraiselburd contends the magistrate erred in denying his blanket discovery motion. He concedes, however, that discovery in an international extradition hearing is limited and lies within the discretion of the magistrate. *Jhirad v. Ferrandina,* 377 F.Supp. 34, 37 (S.D.N.Y.1974) ("under the traditional extradition standards dis-

covery is limited and discretionary"), *aff'd,* 536 F.2d 478, 484 (2d Cir.), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976); *see Merino v. United States Marshal,* 326 F.2d 5, 12–13 (9th Cir.1963) (upholding Commissioner's refusal to authorize the taking of depositions), *cert. denied,* 377 U.S. 997, 84 S.Ct. 1922, 12 L.Ed.2d 1046 (1964). Kraiselburd does not articulate what he expected the file to reveal. The magistrate granted his discovery motion to the extent it related to the question whether there existed probable cause tying appellant to the murders. Because the purpose of the extradition hearing is simply to determine whether there exists probable cause that the fugitive committed the offense charged, the magistrate properly limited discovery. *See Merino,* 326 F.2d at 12–13; *see generally Quinn,* 783 F.2d at 817 n. 41.

■ Finally, Kraiselburd contends the magistrate erred in rejecting his proffer of testimony of two expert document examiners. He sought to have the document examiners attack both the expert basis and the factual conclusions of Argentina's handwriting experts. Admission of evidence in an international extradition proceeding is within the magistrate's discretion. *Hooker v. Klein,* 573 F.2d 1360, 1369 (9th Cir.), *cert. denied,* 439 U.S. 932, 99 S.Ct. 323, 58 L.Ed.2d 327 (1978). The magistrate need only "determine whether there is 'any' evidence sufficient to establish reasonable or probable cause" that the fugitive committed the offense charged. *United States ex rel. Sakaguchi v. Kaulukukui,* 520 F.2d 726, 730–31 (9th Cir.1975) (citing *Fernandez v. Phillips,* 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925)). Even disregarding the handwriting evidence linking appellant to the scene of the crime, the evidence of appellant's motive and threats amply supports a finding of probable cause. The magistrate did not err in denying the proffer of testimony.

The district court's judgment denying appellant's petition for habeas corpus is AFFIRMED.