# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SUWIT PRASOPRAT,
                 *Petitioner-Appellant,*

v.

MICHAEL BENOV, Warden,
                 *Respondent-Appellee.*

No. 03-57253

D.C. No.
CV 02-08751 HLH

OPINION

Appeal from the United States District Court
for the Central District of California
Harry L. Hupp, District Judge, Presiding

Argued and Submitted
October 6, 2004—Pasadena, California

Submission Vacated November 8, 2004

Resubmitted August 15, 2005

Filed August 31, 2005

Before: Harry Pregerson, A. Wallace Tashima, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Tashima

## COUNSEL

Barry O. Bernstein, Burbank, California, for the petitioner-appellant.

Daniel Scott Goodman, Assistant United States Attorney, Los Angeles, California, for the respondent-appellee.

## OPINION

TASHIMA, Circuit Judge:

Suwit Prasoprat, a United States citizen fighting extradition to Thailand, appeals an order of the district court denying his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. Prasoprat contends that his due process rights were violated when the extradition court denied his motion seeking discovery of information related to the use of the death penalty in Thailand for drug offenses. He also contends that the extradition court should have denied his extradition on humanitarian grounds. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. We affirm the district court.

Extradition from the United States is a diplomatic process that is initiated by a request from the nation seeking extradition directly to the Department of State. *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1207 (9th Cir. 2003). "After the request has been evaluated by the State Department to determine whether it is within the scope of the relevant extradition treaty, a United States Attorney . . . files a complaint in federal district court seeking an arrest warrant for the person sought to be extradited." *Id.*

If, after a hearing regarding the evidence of criminality against a person sought to be extradited, a judge or magistrate judge

> deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention . . . , he shall certify the same, together with a copy of all the testimony taken before him, to the

> Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person. . . .

18 U.S.C. § 3184. Thus, a magistrate or judge first holds a hearing to determine "whether (1) the crime is extraditable; and (2) there is probable cause to sustain the charge." *Cornejo-Barreto v. Seifert*, 218 F.3d 1004, 1009 (9th Cir. 2000) (footnote omitted) ("*Cornejo-Barreto I*").[1] The magistrate judge "has no discretionary decision to make." *Lopez-Smith v. Hood*, 121 F.3d 1322, 1326 (9th Cir. 1997). Rather, "[i]f the evidence is sufficient to sustain the charge, the inquiring magistrate judge is required to certify the individual as extraditable to the Secretary of State and to issue a warrant." *Blaxland*, 323 F.3d at 1208. The Secretary of State then determines in her discretion whether the individual will be surrendered. *Id.* (citing *United States v. Lui Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997); 18 U.S.C. § 3186).

## BACKGROUND

In 1998, a confidential informant reported to an agent of the Drug Enforcement Administration ("DEA") that Prasoprat was involved in heroin trafficking between Bangkok, Thailand, and Los Angeles.[2] The DEA monitored Prasoprat for several years and, in 2001, the United States filed a complaint in the United States District Court on behalf of the Government of the Kingdom of Thailand, seeking Prasoprat's extradition to Thailand pursuant to the extradition treaty between the United States and Thailand. The complaint alleged that

---

[1] The holding in *Cornejo-Barreto I* was disapproved of by *Cornejo-Barreto v. Seifert*, 379 F.3d 1075 (9th Cir. 2004) ("*Cornejo-Barreto II*"). The en banc court, however, later vacated *Cornejo-Barreto II* and denied the government's request to vacate *Cornejo-Barreto I*. *Cornejo-Barreto v. Siefert*, 389 F.3d 1307 (9th Cir. 2004) (en banc).

[2] The details of the DEA's investigation are not pertinent to this appeal because Prasoprat does not challenge the finding that there was probable cause that he committed the offense.

Prasoprat and another individual were wanted in Thailand for drug offenses that are covered by the extradition treaty. Prasoprat was ordered detained by a magistrate judge.

Prasoprat filed a motion for discovery, seeking information allegedly in the government's "exclusive possession" that related to the use of the death penalty in Thailand as punishment for drug offenses. Prasoprat argued that the extradition request violated the extradition treaty because the offense for which extradition was sought was punishable by death in Thailand but not in the United States.[3] He therefore sought an order "for the government to disclose any information that the death penalty is the punishment for drug convictions in Thailand."

The magistrate judge denied Prasoprat's discovery motion. He reasoned that the extradition treaty explicitly placed the authority to examine the issue of the death penalty in determining extradition within the executive branch, not the judicial branch. The court thus ruled that discovery regarding the availability of the death penalty was not appropriate.

Following an extradition hearing, the magistrate judge determined that the government had established probable cause to sustain the narcotics charges. The court therefore entered an extradition certification, ordering that Prasoprat was extraditable and certifying the matter to the United States Secretary of State to issue a warrant to extradite Prasoprat.

---

[3]Prasoprat also argued that Thailand's extradition request violated Article 3 of the treaty, which provides that extradition shall not be granted when the offense is a political offense, or when it is established that extradition is requested for political purposes. Extradition Treaty with Thailand, Dec. 14, 1983, U.S.-Thail., art. 3, 1983 U.S.T. Lexis 418, *available at* http://www.usextradition.com/thailand_bi.htm. Prasoprat contended that his extradition was sought for political purposes. He does not raise this issue on appeal.

Prasoprat then filed this petition for a writ of habeas corpus. The magistrate judge submitted a report and recommendation to the district court, recommending that the petition be denied. The district court adopted the report and denied Prasoprat's petition. *See Prasoprat v. Benov*, 294 F. Supp. 2d 1165 (C.D. Cal. 2003). Prasoprat filed a timely notice of appeal. The district court issued a certificate of appealability on two grounds: (1) the extradition court's denial of Prasoprat's discovery request for information regarding the death penalty in Thailand for drug possession; and (2) the extradition court's refusal to deny extradition on humanitarian grounds.

## STANDARD OF REVIEW

The decision to certify a person as extraditable is not subject to direct appeal but may be challenged collaterally through habeas corpus review. *Barapind v. Enomoto*, 400 F.3d 744, 748 n.5 (9th Cir. 2005) (en banc) (per curiam); *Cornejo-Barreto I*, 218 F.3d at 1009. The district court's habeas review of an extradition order is limited to: (1) whether the extradition court had jurisdiction to conduct the proceeding and jurisdiction over the individual sought; (2) whether the extradition treaty was in force and the crime fell within the treaty's terms; (3) whether there was probable cause that the individual committed the crime; and (4) whether the crime fell within the political offense exception. *Id.* at 1009-10; *Mainero v. Gregg*, 164 F.3d 1199, 1205 (9th Cir. 1999); *see also Fernandez v. Phillips*, 268 U.S. 311, 312 (1925) (stating that "habeas corpus is available only to inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty and . . . whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty").

We review de novo the district court's denial of a habeas petition in extradition proceedings. *Cornejo-Barreto I*, 218 F.3d at 1009; *see also Barapind*, 400 F.3d at 748 (reviewing de novo the district court's decision on questions of law and

mixed questions of law and fact). The district court's denial of a discovery request in an extradition case is reviewed for an abuse of discretion. *Emami v. United States Dist. Court*, 834 F.2d 1444, 1452 (9th Cir. 1987).

## DISCUSSION

On appeal, Prasoprat raises two issues. First, he contends that the extradition court abused its discretion in denying his motion for discovery regarding the use of the death penalty in Thailand for drug offenses. Second, he argues that the extradition court should have denied extradition on humanitarian grounds.

## I.   Discovery Motion

[1] "An extradition proceeding is not a trial[.]" *Emami*, 834 F.2d at 1452. Thus, "discovery in an international extradition hearing is limited and lies within the discretion of the magistrate." *United States v. Kraiselburd (In re Extradition of Kraiselburd)*, 786 F.2d 1395, 1399 (9th Cir. 1986); *see also, e.g.*, *Koskotas v. Roche*, 931 F.2d 169, 175 (1st Cir. 1991) (stating that, "in an extradition proceeding, discovery is not only discretionary with the court, it is narrow in scope"); *cf. Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1407 (9th Cir. 1988) ("Although there is no explicit statutory basis for ordering discovery in extradition proceedings, the extradition court has the inherent power to order such discovery procedures as law and justice require.").

[2] The issue regarding which Prasoprat sought discovery — the use of the death penalty in Thailand — was outside the purview of the magistrate judge. Article 6 of the extradition treaty between the United States and Thailand deals with capital punishment and states:

> When the offense for which extradition is sought is punishable by death under the laws of the Request-

ing State and is not punishable by death under the laws of the Requested State, the competent authority of the Requested State may refuse extradition unless:

> (a) the offense is murder as defined under the laws of the Requested State; or

> (b) the competent authority of the Requesting State provides assurances that it will recommend to the pardoning authority of the Requesting State that the death penalty be commuted if it is imposed.

In the case of the United States of America, the competent authority is the Executive Authority.

Extradition Treaty with Thailand, Dec. 14, 1983, U.S.-Thail., art. 6, 1983 U.S.T. Lexis 418, *available at* http://www.usextradition.com/thailand_bi.htm. The treaty thus clearly provides that the executive branch holds the authority for determining extradition when the death penalty is involved.

[3] The only purpose of the extradition hearing is for the magistrate judge to determine whether the crime is extraditable and whether there is probable cause to support the charge. *Cornejo-Barreto I*, 218 F.3d at 1009. If those requirements are met, the judicial officer *must* certify the individual as extraditable to the Secretary of State. *Id.*; *see also Blaxland*, 323 F.3d at 1208 (stating that "American judicial officers conduct a circumscribed inquiry in extradition cases" and that, "[i]f the evidence is sufficient to sustain the charge, the inquiring magistrate judge is required to certify the individual as extraditable to the Secretary of State and to issue a warrant").

[4] Thus, discovery of information regarding the use of the death penalty in Thailand, like the issue itself, is not relevant

to the magistrate judge's inquiry. Even if such evidence were in the government's exclusive possession, it would not be relevant to the magistrate judge's decision regarding whether to certify Prasoprat as extraditable. *Cf. Emami*, 834 F.2d at 1452 (in deciding discovery issues in extradition hearings, one consideration is " 'whether the resolution of the contested issue would be appreciably advanced by the requested discovery' ") (quoting *Quinn v. Robinson*, 783 F.2d 776, 817 n.41 (9th Cir. 1986)).

Our conclusion is supported by our decisions in *Kraiselburd* and *Lopez-Smith*. In *Kraiselburd*, the petitioner made a "blanket discovery request" for Argentina, the requesting country, to produce its entire file on the crime with which he was charged. *Kraiselburd*, 786 F.2d at 1399. The magistrate granted the motion only "to the extent it related to the question whether there existed probable cause tying appellant to the murders." *Id.* On appeal from the district court's denial of the habeas petition, we concluded that, "[b]ecause the purpose of the extradition hearing is simply to determine whether there exists probable cause that the fugitive committed the offense charged, the magistrate properly limited discovery." *Id.* Under *Kraiselburd*, therefore, the magistrate judge may limit discovery to issues related to the purpose of the extradition hearing.

**[5]** Similarly, in *Lopez-Smith*, the petitioner sought to present evidence regarding whether discretion should be exercised to extradite him. On appeal, we stated that the magistrate judge properly excluded evidence addressing the exercise of discretion "because the magistrate judge has no discretion." *Lopez-Smith*, 121 F.3d at 1326. Because discretion belonged to the Secretary of State, *Lopez-Smith* stated that it was "for the Secretary to decide what evidence might have a bearing upon its exercise. There is no reason why the magistrate judge should decide what evidence might be useful to the Secretary of State." *Id.* As in both *Kraiselburd* and *Lopez-Smith*, the

evidence that Prasoprat sought in his motion for discovery was not relevant to the extradition judge's limited inquiry.

Prasoprat urges us to rely on *Demjanjuk v. Petrovsky*, 10 F.3d 338 (6th Cir. 1994), in which government attorneys failed to disclose "exculpatory information in their possession during [denaturalization proceedings] culminating in extradition proceedings." *Id.* at 339. The evidence sought by Demjanjuk, however, related to whether he was in fact the individual who had committed the extraditable offense and thus concerned the probable cause determination. *See In re Extradition of Drayer*, 190 F.3d 410, 415 (6th Cir. 1999) (stating that *Demjanjuk* would require the United States to "turn over any exculpatory materials in its possession that would undercut a finding that there was probable cause to believe that" the petitioner committed the crime charged by the requesting country).

[6] By contrast, in the case at bench, the information sought by Prasoprat does not relate to an issue within the scope of the magistrate judge's authority to examine. When the offense for which extradition is sought is punishable by death, the question of whether to refuse extradition on that basis is within the authority of the executive branch, not the judicial branch.[4] We accordingly conclude that the extradition court did not abuse its discretion in denying the motion seeking discovery on the use of the death penalty in Thailand.

## II.  Humanitarian Exception

[7] Prasoprat's second contention is that the extradition court should have denied extradition on humanitarian

---

[4]Prasoprat's assertion that the Executive branch has "exclusive possession" of information concerning the use of the death penalty in Thiland for drug offenses, if true, would bolster the Executive's claim that it has the expertise to exercise the authority granted to the Requested State by Article 6 of the treaty.

grounds. We have long adhered to the rule of non-inquiry — that it is the role of the Secretary of State, not the courts, to determine whether extradition should be denied on humanitarian grounds or on account of the treatment that the fugitive is likely to receive upon his return to the requesting state. *See Blaxland*, 323 F.3d at 1208 (stating that, "judges generally 'refrain from examining the penal systems of requesting nations, leaving to the Secretary of State determinations of whether the defendant is likely to be treated humanely' ") (quoting *Lopez-Smith*, 121 F.3d at 1327); *see also Barapind v. Reno*, 225 F.3d 1100, 1105-06 (9th Cir. 2000) (stating that "[m]any courts, including ours, have adhered to the general rule that it is not the role of the courts, but rather the Secretary of State, to determine whether extradition should be denied on humanitarian grounds"). The rule of non-inquiry is based on the principle that the Secretary of State's exercise of discretion regarding whether to extradite an individual may be based not only on "considerations individual to the person facing extradition" but "may be based on foreign policy considerations instead." *Lopez-Smith*, 121 F.3d at 1326. "The need for flexibility in the exercise of Executive discretion is heightened in international extradition proceedings which necessarily implicate the foreign policy interests of the United States." *Emami*, 834 F.2d at 1454 (quoting *Escobedo v. United States*, 623 F.2d 1098, 1105 (5th Cir. 1980)).

We have, on occasion, cited the possibility of a humanitarian exception to extradition; however, we have never actually "relied on it to create" such an exception. *Mainero*, 164 F.3d at 1210 ("Assuming that the possibility [of a humanitarian exception to extradition] exists in the abstract, this is not the sort of situation . . . for which an exception might be justified."); *see, e.g.*, *Cornejo-Barreto I*, 218 F.3d at 1010 (stating that "[o]ur research failed to identify any case in which this theoretical exception has been applied" and declining to consider it); *Lopez-Smith*, 121 F.3d at 1326-27 (discussing the "frequently quoted (but not followed) dictum" that a court may apply a humanitarian exception to extradition, but con-

cluding that "the facts in this case are not so egregious as to invoke the dictum").

**[8]** We therefore agree with the district court that "[a]n extradition magistrate lacks discretion to inquire into the conditions that might await a fugitive upon return to the requesting country." *Prasoprat*, 294 F. Supp. 2d at 1171. The extradition magistrate's authority has been constrained by statute and caselaw to a narrow inquiry, such that the magistrate judge does not have any discretion to exercise. Once the magistrate judge determines that the crime is extraditable and there is probable cause to sustain the charge, "it is the Secretary of State, representing the executive branch, who determines whether to surrender the fugitive."[5] *Blaxland*, 323 F.3d at 1208.

**[9]** The extradition treaty at issue here repeatedly places the decision to extradite a person from the United States within the authority of the executive branch. *See, e.g.*, Extradition Treaty art. 8 (stating that, "[i]n a case in which the United States of America is the Requested State, the Executive Authority shall have the power to extradite its nationals if, in its discretion, it is deemed proper to do so"); *id.* art. 13 (when requests for extradition are made by several states, "the decision . . . shall be made by the Executive Authority in the United States of America"). This is in accordance with the "generally established principle . . . that '[t]he Secretary of State, exercising executive discretion through delegation of this authority by the President, may refuse to extradite a relator despite a judicial determination that extradition would be compatible with the terms of the applicable treaty.' " *Blax-*

---

[5]We note, however, that in light of legislation implementing the United Nations Convention against Torture, the rule of non-inquiry does not prevent an extraditee who fears torture upon surrender to the requesting government from petitioning for habeas corpus review of the Secretary of State's decision to extradite him. *Cornejo-Barreto I*, 218 F.3d at 1009 n.5, 1016-17.

*land*, 323 F.3d at 1208 (quoting *Lopez-Smith*, 121 F.3d at 1326) (alteration in original). The extradition magistrate simply does not have the authority to consider foreign policy concerns and other issues that may affect the executive branch's decision whether to extradite. *See id.* (stating that "the executive branch's ultimate decision on extradition may be based on a variety of grounds, ranging from individual circumstances, to foreign policy concerns, to political exigencies"). For these reasons, we agree with the district court that the magistrate judge did not have the authority to refuse to issue a certificate of extradition on humanitarian grounds.[6]

[10] The judgment of the district court denying Prasoprat's habeas petition accordingly is

**AFFIRMED.**

---

[6]Prasoprat emphasizes that he is a United States citizen. We have stated, however, that "United States citizenship does not bar extradition by the United States." *Quinn*, 783 F.2d at 782.