**Eufemia Alamo RAMIREZ,
Petitioner–Appellant,**

v.

**Michael CHERTOFF, Secretary of the
Department of Homeland Security;
et al., Respondents–Appellees.**

No. 07–56084.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 5, 2007.

Filed Feb. 22, 2008.

David A. Schlesinger, Esq., Guerrero Jacobs & Schlesinger LLP, San Diego, CA, for Petitioner–Appellant.

USSD–Office of the U.S. Attorney, San Diego, CA, Joseph S. Green, for Respondents–Appellees.

Before: T.G. NELSON, PAEZ, and BYBEE, Circuit Judges.

## MEMORANDUM *

Eufemia Alamo Ramirez appeals the denial of her petition for a writ of habeas corpus under 28 U.S.C. § 2241. We have jurisdiction under 28 U.S.C. § 1291 and review the district court's ruling de novo. *Prasoprat v. Benov*, 421 F.3d 1009, 1013 (9th Cir.2005). Because the district court did not err in declining to apply a judicial humanitarian exception to extradition, we affirm.

On November 23, 2005, the Mexican ambassador to the United States transmitted a request for Ramirez's extradition to the Secretary of State. In response, the Government filed a complaint in the Southern District of California seeking a certificate of extraditability. After proceedings before a magistrate judge, the certificate was issued on October 24, 2006.

Ramirez challenged the extradition certification by filing a petition for habeas corpus under 28 U.S.C. § 2241. *See Cornejo–Barreto v. Seifert*, 218 F.3d 1004, 1009 (9th Cir.2000) ("[A decision on extraditability] is not subject to direct appeal, but collateral review of the magistrate or judge's order is available through habeas corpus review."). The district court denied Ramirez's petition, finding, *inter alia*, that Ramirez was not entitled to relief under a humanitarian exception to extradition. Ramirez appeals only this part of the district court's ruling.

We agree with the district court that Ramirez's evidence and arguments do not "rise to the level ... that might require this Court to grant the extraordinary relief sought," i.e., a judicially-imposed humanitarian exception to extradition. "We have long adhered to the rule of non-inquiry— that it is the role of the Secretary of State, not the courts, to determine whether extradition should be denied on humanitarian grounds or on account of the treatment that the fugitive is likely to receive upon his return to the requesting state." *Prasoprat*, 421 F.3d at 1016. While "[w]e have, on occasion, cited the possibility of a humanitarian exception to extradition ... we have never actually relied on it to create such an exception." *Id.* (internal quotation marks omitted).[1] We have sug-

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. In *Lopez–Smith v. Hood*, 121 F.3d 1322 (9th Cir.1997), we explained that the humanitarian exception is based on "frequently quoted (but not followed) dictum" in *Gallina v. Fraser*, 278 F.2d 77 (2d Cir.1960), "that 'procedures or punishment so antipathetic to a federal court's sense of decency' might require reex-amination of the general principle that an extraditing court will not inquire into the procedures or treatment awaiting a surrendered fugitive." *Lopez–Smith*, 121 F.3d at 1326–27 (quoting *Gallina*, 278 F.2d at 79). Ramirez does not point to any case where a court has applied the humanitarian exception.

gested, however, that a showing that a petitioner would be tortured in the requesting country could trigger the humanitarian exception. *See Cornejo–Barreto,* 218 F.3d at 1010. But we have not yet been presented with such a case, and we are not presented with one here.

Ramirez does not claim that she will be tortured; she claims that she will be subjected to unduly "harsh punishment" because the crime with which she is charged in Mexico carries a mandatory minimum sentence of six years, while she would "presumably" be subject to a shorter sentence under United States law. This falls far short of the circumstances that might warrant invocation of a humanitarian exception. It is a longstanding principle that we do not parse the differences between our own criminal law and that of a requesting country, so long as the conduct in question is criminal in both nations. *See, e.g., Collins v. Loisel,* 259 U.S. 309, 312, 42 S.Ct. 469, 66 L.Ed. 956 (1922); *Neely v. Henkel,* 180 U.S. 109, 123, 21 S.Ct. 302, 45 L.Ed. 448 (1901) ("When an American citizen commits a crime in a foreign country, he cannot complain if required to submit to such modes of trial and to such punishment as the laws of that country may prescribe for its own people. . . .").

Ramirez also claims that the mandatory minimum sentence in Mexico is excessive and unduly harsh in light of her "de minimis" violations of Mexican law and her poor health. It is not for us to say what is a "de minimis" violation of Mexican law. *See Neely,* 180 U.S. at 123, 21 S.Ct. 302.

As for Ramirez's health concerns, she cites no authority to demonstrate that this factor justifies imposition of a judicial humanitarian exception. We decline to recognize a humanitarian exception on the basis of the health concerns raised in this case, which Ramirez states are "endemic to individuals of [her] . . . age." To do so

would, in essence, open the door to judicial interposition in any case where the potential extraditee is over seventy years old. Such a categorical exception would run counter to the well-established rule "that it is the role of the Secretary of State, not the courts, to determine whether extradition should be denied on humanitarian grounds." *Prasoprat,* 421 F.3d at 1016.

Finally, Ramirez argues for application of the humanitarian exception on the grounds that she will be prejudiced by the Mexican government's delay in seeking extradition and that the Mexican government "may have made a reckless misrepresentation" when Mexican officials initially represented that Ramirez had "jumped bail" in Mexico. Neither of these contentions rises to a level that would trigger a humanitarian exception. As the district court noted, the extradition treaty itself accounts for concerns of delay by incorporating the relevant domestic statutes of limitations, and Ramirez has not challenged the magistrate judge's finding that those statutes have been satisfied. Likewise, Ramirez's speculative claim that the Mexican government may have "conceivably" engaged in bad-faith conduct in claiming she had "jumped bail" falls short of the bar for the humanitarian exception.

In sum, Ramirez has not established that the "procedures or punishment" awaiting her in Mexico are "so antipathetic to [this] court's sense of decency," *Gallina,* 278 F.2d at 79, as to justify the extraordinary habeas relief she seeks under § 2241.

AFFIRMED.