Hedelito Trinidad y **GARCIA,**
Petitioner,

v.

Michael **BENOV** (Warden),
Respondent.

No. **CV 08–07719–MMM (CW).**

United States District Court,
C.D. California.

May 15, 2009.

Craig A. Harbaugh, Sean K. Kennedy, Federal Public Defenders Office, Los Angeles, CA, for Petitioner.

Assistant U.S. Attorney LA-CV, Daniel S. Goodman, Jason P. Gonzalez, AUSA-Office of U.S. Attorney, Los Angeles, CA, Lisa A. Olson, U.S. Department of Justice, Washington, DC, for Respondent.

## ORDER ACCEPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE, DENYING APPLICATION TO DISMISS PETITION, AND ORDERING FURTHER PROCEEDINGS

MARGARET M. MORROW, District Judge.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the court has reviewed the entire record in this action, as well as the Report and ·Recommendation of the United States Magistrate Judge and Respondent's objections thereto. The court has also considered Respondent's Notice of Recent and Relevant Authority, and Petitioner's response to it.[1] The court has made a *de novo* determination with respect to any portions of the Report and Recommendation as to which objection has been made.

Accordingly, **IT IS ORDERED:** that the Report and Recommendation of the United States Magistrate Judge be accepted; and that respondent's application to dismiss the second amended petition (docket no. 17, filed in the present action on November 3, 2008) be denied.

**IT IS FURTHER ORDERED** that, within thirty (30) days of the filing date of this order, Respondent shall serve and file an answer addressing Petitioner's APA claim on its merits.

---

**1.** Having reviewed *Kiyemba v. Obama,* 561 F.3d 509 (D.C.Cir.2009), the court concludes that it does not undercut Judge Woehrle's analysis of the impact of *Munaf v. Geren,* 553 U.S. 674, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008), and 8 U.S.C. § 1252(a)(4) of the REAL ID Act on the precedential effect of *Cornejo–Barreto v. Seifert* (*"Cornejo–Barreto* I").

With the answer, Respondent shall also submit sufficient evidence from the administrative record underlying the Secretary's decision to enable this court to determine whether the Secretary acted arbitrarily, capriciously, in abuse of discretion, or in violation of the law, in light of her duties under the Torture Convention, the FARR Act, and State Department regulations. Respondent may at that time raise any issues about the appropriate protection of confidential materials.

The magistrate judge will then set a schedule for the filing of Petitioner's reply, and for further proceedings as may be required.

The Clerk of the Court shall serve copies of this Order on all counsel.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

CARLA M. WOEHRLE, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Margaret M. Morrow, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California. For reasons stated below, Respondent's application to dismiss the petition should be denied and further proceedings ordered.

## I. *BACKGROUND AND PROCEEDINGS*

Petitioner Hedelito Trinidad y Garcia ("Petitioner") is in federal custody awaiting possible extradition to the Philippines, and challenges the legality of that custody. The present action is the third of three related cases in this court, namely, an extradition proceeding and two habeas petitions.

## A. THE EXTRADITION PROCESS

Extradition is the formal surrender by one state to another of an individual charged with an offense within the territorial jurisdiction of the requesting state. *See Terlinden v. Ames,* 184 U.S. 270, 289, 22 S.Ct. 484, 46 L.Ed. 534 (1902); *Cohen v. Benov,* 374 F.Supp.2d 850, 854 (C.D.Cal. 2005). Extradition from the United States to a foreign nation is initiated by a request to the Department of State from the nation seeking extradition. *Vo v. Benov,* 447 F.3d 1235, 1237 (9th Cir.2006); *Prasoprat v. Benov,* 421 F.3d 1009, 1012 (9th Cir. 2005); *Blaxland v. Commonwealth Dir. of Pub. Prosecutions,* 323 F.3d 1198, 1207 (9th Cir.2003). If the State Department finds an extradition request to be within the scope of a relevant extradition treaty, a United States Attorney may be instructed to act for the foreign state by filing a complaint in a federal district court. *Vo,* 447 F.3d at 1237; *Prasoprat* 421 F.3d at 1012; *Blaxland,* 323 F.3d at 1207.

Such a complaint may be brought before a federal judicial officer, who may issue a warrant for the person charged, and may hear and consider evidence. 18 U.S.C. § 3184. As in Petitioner's case, extradition proceedings are typically brought before a magistrate judge. *Vo,* 447 F.3d at 1237. The magistrate judge's role is to determine (1) whether the charged offense is extraditable under the relevant treaty; and (2) whether there is probable cause to sustain the charge against the individual in question. *Vo,* 447 F.3d at 1237; *Prasoprat,* 421 F.3d at 1012. On finding probable cause to sustain an extraditable charge, the magistrate judge *"is required to certify* the individual as extraditable to the Secretary of State." *Vo,* 447 F.3d at 1237 (*quoting Blaxland,* 323 F.3d at 1208 and adding emphasis); *accord Prasoprat,* 421 F.3d at 1012.

A magistrate judge's decision to certify a person as extraditable cannot be

directly appealed but may be challenged in a habeas petition filed as a new action in the district court. *Vo*, 447 F.3d at 1240. The district court's habeas review of a magistrate judge's extradition order is limited to whether the magistrate had jurisdiction; whether a treaty in force covered the charged offense; and whether competent evidence supported a finding of probable cause. *Vo*, 447 F.3d at 1240 (*quoting Mainero v. Gregg*, 164 F.3d 1199, 1201–02 (9th Cir.1999)).

■ If a person has been judicially certified as extraditable, the Secretary of State then decides whether to surrender the extraditee to the foreign state. *Vo*, 447 F.3d at 1237. The Secretary may decide to extradite, not to extradite, or to extradite with conditions. *See, e.g., United States v. Kin–Hong*, 110 F.3d 103, 109–10 (1st Cir.1997). The Secretary's decision "may be based on a variety of grounds, ranging from individual circumstances, to foreign policy concerns, to political exigencies." *Blaxland*, 323 F.3d at 1208.

## B. PETITIONER'S EXTRADITION CASE

On December 18, 2003, the United States Attorney filed a complaint seeking Petitioner's extradition to the Philippines on a charge of kidnaping for ransom, and the court issued a bench warrant. [*See United States v. Trinidad*, Case No. M 03–2710, docket ("dkt.") no. 1.] Petitioner was arrested, and was arraigned in this court on October 8, 2004. [M 03–2710, dkt. nos. 4–5] The federal public defender was appointed to represent him. [M 03–2710, dkt. no. 5.]

On December 10, 2004, the case was re-docketed as *Extradition of Trinidad*, No.

CV 04–10097–MMM(CW) and assigned to the undersigned magistrate judge, and a formal request for extradition was filed. [CV 04–10097, dkt. nos. 9–11.] The matter was briefed extensively, and the court held an evidentiary hearing (on May 19 and 24, 2005, with closing arguments on August 25, 2005). [CV 04–10097, dkt. nos. 33, 35, 37.] At a hearing on November 13, 2006, the court denied without prejudice Petitioner's motion for bail. [CV 04–10097, dkt. no. 56.]

A Certification of Extraditability ("Certification," CV 04–10097, dkt. no. 72) by the magistrate judge was filed September 7, 2007.

In Petitioner's case it was undisputed that the court had jurisdiction, that a valid treaty was in force, and that the charged offense was covered by the treaty. [Certification at 9–10.] The parties disputed whether there was probable cause to believe Petitioner committed the charged offense. [*Id.* at 10.] After considering many evidentiary problems, the magistrate judge concluded that the minimum standard of probable cause had been satisfied.[1] [Certification at 33–36 and *passim.*] The magistrate judge then certified Petitioner for extradition to the Philippines. [*Id.* at 36.] However, in an order filed September 18, 2007, the magistrate judge stayed extradition until completion of habeas corpus proceedings in the district court. [CV 04–10097, dkt. no. 70.].

## C. THE FIRST HABEAS ACTION

On October 5, 2007, Petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. The case was assigned to District Judge Margaret M. Morrow, and docketed as No. CV 07–6387–MMM. Peti-

---

1. Petitioner also argued for denial of certification on humanitarian grounds under the United Nations Convention Against Torture (discussed below). The magistrate judge found that the court, in an extradition proceeding, had no authority to deny certification on such grounds, and that such a claim was not ripe for judicial review so long as the Secretary of State had not yet decided to surrender Petitioner. [*Certification* at 10 n. 12.]

tioner challenged the extradition certification, contending that the magistrate judge erred in admitting supplemental evidence; that even if the evidence was properly admitted, it did not support a finding of probable cause; and that even if adequate evidence supported a finding of probable cause, Petitioner's extradition would violate federal law and the Convention Against Torture ("Torture Convention"). [Order Denying Petition for Writ of Habeas Corpus ("Order Denying Petition") at 15, CV 07–6387, dkt. no. 43.]

On December 20, 2007, Petitioner filed a motion to stay the habeas proceeding until the Secretary of State reviewed his Torture Convention claim. [CV 07–6387, dkt. no. 23.] In an order filed March 3, 2008, the court denied the motion to stay, finding that a Torture Convention claim would only be ripe for judicial review if the Secretary decided to surrender Petitioner, and that Petitioner could seek a stay of extradition, if necessary, once the district court decided the habeas petition. ["Order Denying Stay," CV 07–6387, dkt. no. 31.] On April 15, 2008, Petitioner moved for reconsideration of the order denying a stay. [CV 07–6387, dkt. no. 32.] In an order filed May 13, 2008, the court denied the motion, again finding the Torture Convention claim not ripe for review unless and until the Secretary decided to surrender Petitioner. ["Order Denying Reconsideration," CV 07–6387, dkt. no. 37.]

In an order filed July 16, 2008, the court denied Petitioner's first habeas petition, rejecting the evidentiary arguments, and affirming the probable cause finding. [CV 07–6387, dkt. no. 43.] The court also found, again, that the Torture Convention

claim, if reviewable, was not ripe until the Secretary made a final decision to surrender Petitioner for extradition to the Philippines, and denied the first petition without prejudice to asserting a Torture Convention claim in a second habeas petition. [*Id.*] On July 24, 2008, Petitioner waived his right to appeal the district court decision.[2] [CV 07–6387, dkt. no. 44.]

On September 12, 2008, the Secretary of State issued a warrant to surrender Petitioner for extradition, and Petitioner filed a request to stay the extradition pending resolution of a second habeas petition. [CV 07–6387, dkt. no. 46.] In orders filed September 29, 2008, the court granted Petitioner's stay request. [CV 07–6387, dkt. nos. 51, 52.] Judgment was subsequently entered, on November 20, 2008, denying Petitioner's first habeas petition. [CV 07–6387, dkt. no. 63.]

## D. THE PRESENT HABEAS ACTION

The present action was opened on November 24, 2008, as a petition for writ of habeas corpus under 28 U.S.C. § 2241, docketed as No. CV 08–7719–MMM(CW). Petitioner's second habeas petition, originally filed on September 17, 2008, in Case No. CV 07–6387, was reentered in the new action [CV 08–7719, dkt. no. 1], along with a supporting memorandum ["P. Mem.," dkt. no 6[3]], exhibits [dkt. no. 8], the court's prior orders staying extradition [dkt. nos. 9, 10], Respondent's application to dismiss the second petition ["R. App.," dkt. no. 17], Petitioner's traverse ["Tra.," dkt. no. 18], and other documents.[4] Respondent's reply ("Rep.") was filed on January 5, 2009. [CV 08–7719, dkt. no. 29.] The application

---

**2.** A magistrate judge's extradition order is not appealable, but a district court decision, on habeas review of that order, is.

**3.** Where, as here, only a "dkt. no." and not a case number is cited, this refers to documents in the present action, CV 08–7719.

**4.** In an order filed November 20, 2008, in Case No. CV 07–6387, the court directed the clerk to assign a new docket number to Petitioner's second habeas action and to transfer the second petition (and other documents filed in CV 07–6387) to the new action which was referred to the magistrate judge. [CV

to dismiss has been fully briefed and submitted for decision. [*See* Minute Order, dkt. no. 28, filed December 9, 2008.][5]

## II. *PETITIONER'S PRESENT CLAIMS*

■ Petitioner's second petition challenges Petitioner's custody pending extradition to the Philippines under the Secretary of State's surrender warrant issued September 12, 2008. [CV 08–7719, dkt. no. 1.] Petitioner contends that his extradition would violate the Convention Against Torture and federal law because there are substantial grounds to believe that he will be tortured if returned to the Philippines. He asserts three grounds for relief, claiming that the Secretary's decision to extradite him, in spite of his Torture Convention claim, (1) was arbitrary in violation of the Administrative Procedure Act ("APA"), (2) denied him procedural due process under the Fifth Amendment, and (3) denied him substantive due process under the Fifth Amendment. [P. Mem., dkt. no. 6.] The APA claim, in particular, is premised on the Ninth Circuit's decision in *Cornejo–Barreto v. Seifert ("Cornejo–Barreto I")*, 218 F.3d 1004 (9th Cir.2000).[6]

Respondent has presented seven arguments for dismissing the present petition for lack of jurisdiction: (I) habeas review of Torture Convention claims by district courts is barred by the REAL ID Act[7];

(II) judicial review of the Secretary's decision is precluded by the "Rule of Non–Inquiry" reaffirmed in *Munaf v. Geren*, 553 U.S. 674, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008); (III) neither the Torture Convention nor the FARR Act[8] overturned the Rule of Non–Inquiry; (IV) the APA does not support judicial review of the Secretary's decision; (V) the suggestion in *Cornejo–Barreto I* that the Secretary's final decisions are reviewable is non-binding dicta; (VI) the procedural due process claim is without merit; and (VII) the substantive due process claim is without merit. [R.App., dkt. no. 17.]

In his traverse, along with responding to Respondent's arguments, Petitioner contends that this court already decided (in CV 07–6387) that it has jurisdiction to review the Secretary's final decision, and, therefore, that Respondent's application, by not addressing the substance of Petitioner's claims, violated the court's order to show cause and amounted to an unauthorized motion for reconsideration. Petitioner also disputes Respondent's interpretation of the REAL ID Act. [Dkt. no. 18.] Respondent's reply reasserts arguments on the REAL ID Act and the *Munaf* decision.[9] [Dkt. no. 29.]

## III. *DISCUSSION*

■ As noted above, in an original extradition proceeding a magistrate judge's

---

07–6387, dkt. no. 62.] The transfer of documents to the new action has led to some confusion, in that dkt. nos. 2–4 were filed and entered out of order.

5. Because Respondent's application seeks involuntary dismissal of the action, the decision is properly addressed by the magistrate judge and submitted by report and recommendation to the assigned district judge. *See* 28 U.S.C. § 636(b)(1).

6. *Cornejo–Barreto* I, its complicated procedural history, and its precedential value are discussed below.

7. The REAL ID Act of 2005, Pub.L. No. 109–13, 119 Stat. 231.

8. The Foreign Affairs Reform and Restructuring Act ("FARR Act") of 1998, Pub.L. No. 105–277, 112 Stat. 2681, in pertinent part, implemented Article 3 of the Torture Convention.

9. Respondent also explains why the government filed an "application" rather than a "motion." [Dkt. no. 29 at 4n.4.]

role is to determine whether there is probable cause to sustain an extraditable charge. Under the "Rule of Non–Inquiry," the magistrate does not inquire into the penal system of a requesting nation, or try to determine whether an extraditee is likely to be treated humanely if extradited, leaving such determinations to the Secretary of State. *See, e.g. Prasoprat v. Benov,* 421 F.3d at 1016. In part for that reason, this court declined to address Petitioner's Torture Convention claim in either the original extradition proceeding [CV 04–10097] or the first habeas proceeding reviewing that decision [CV 07–6387].

Now the magistrate judge has certified Petitioner as extraditable, the district court has affirmed that decision on habeas review, Petitioner has waived appeal of the habeas decision, the Secretary has decided to surrender Petitioner, and Petitioner has reasserted claims under the Torture Convention claim in a challenge to the Secretary's final decision. Respondent argues that the Rule of Non–Inquiry still applies and bars any judicial review of Petitioner's claims. Petitioner argues that the court has jurisdiction to review his claims under *Cornejo–Barreto* I, that this court has already found that it has such jurisdiction, and that his claims merit habeas corpus relief. The parties' respective arguments are discussed in detail below.

### A. THIS COURT'S PRIOR DECISIONS AND PETITIONER'S CLAIMS

As noted above, Petitioner tried to raise a Torture Convention claim in the original

extradition action [CV 04–10097], and at least three times in the first habeas action [CV 07–6387]—in the petition, the motion to stay, and the motion for reconsideration. On each occasion, the court both declined to review a Torture Convention claim (as not ripe), and declined to accept Respondent's arguments for rejecting Petitioner's claims (without actually reaching a decision on Respondent's contentions).

Petitioner now argues that [in CV 07–6387] the court already decided that Petitioner's Torture Convention claim would be ripe and the court would have jurisdiction to review it if the Secretary made a final decision to extradite. However, the record shows that this court made a different, more limited determination, namely, that the Torture Convention claim was not ripe so long as the Secretary had not made a final decision, and that the court could decline to reach such a claim at that time and in that proceeding, because Petitioner could assert it in a new petition if the Secretary made a final decision.[10]

While the court in CV 07–6387 did not actually decide whether Petitioner's Torture Convention claim, if ripe, would be reviewable, that issue has now been squarely raised in the present petition and the application to dismiss it, and must now be decided.

### B. THE TORTURE CONVENTION AND ITS IMPLEMENTATION

The Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment was adopted by the United Nations General

---

**10.** *See* Order Denying Stay, CV 07–6387, dkt. no. 31, at 10–11 n. 10 ("Because the court declines to stay this action on other grounds, it need not reach the merits of this argument.... Without deciding this issue, the court notes ..."); *see also* Order Denying Reconsideration, CV 07–6387, dkt. no. 37, at

11–12 (finding Torture Convention claim not ripe); *see also* Order Denying Petition, CV 07–6387, dkt. no. 43, at 3376 ("Although it has not directly decided the issue (and does not do so here), the court incorporates its earlier discussion expressing doubt about the merits of the government's argument here.").

Assembly in 1984, and entered into force as to the United States in 1994. *Cornejo–Barreto I*, 218 F.3d at 1007 and n. 1 (*citing* G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51 at 197, U.N. Doc. A/RES/39/ 708). Article 3 of the Torture Convention provides as follows:

> 1. No State Party shall expel, return ("refouler") or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture.
>
> 2. For the purpose of determining whether there are such grounds, the competent authorities shall take into account all relevant considerations including, where applicable, the existence in the State concerned of a consistent pattern of gross, flagrant or mass violations of human rights.

*Quoted* in *Cornejo–Barreto* I, 218 F.3d at 1011.

Article 3 of the Torture Convention was implemented by Congress in 1998 in section 2242 of the FARR Act, which was codified in a note to 8 U.S.C. § 1231, and which provides, in pertinent part, as follows:

> (a) Policy.—It shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture, regardless of whether the person is physically present in the United States.
>
> (b) Regulations.—... the heads of the appropriate agencies shall prescribe regulations to implement the obligations of the United States under Article 3 of the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment, subject to any reservations, understandings, declarations, and provisos contained in the United States Senate resolution of ratification of the Convention.
>
> (c) ....
>
> (d) Review and construction.—Notwithstanding any other provision of law, and except as provided in the regulations described in subsection (b), no court shall have jurisdiction to review the regulations adopted to implement this section, and nothing in this section [this note] shall be construed as providing any court jurisdiction to consider or review claims raised under the Convention or this section [this note], or any other determination made with respect to the application of the policy set forth in subsection (a), except as part of the review of a final order of removal pursuant to section 242 of the Immigration and Nationality Act (8 U.S.C. 1252).

As provided in subsection (b), above, the State Department adopted regulations implementing section 2242 of the FARR Act and Article 3 of the Torture Convention in the extradition context. These regulations provide, in part, as follows:

> § 95.2 Application
>
> (b) Pursuant to sections 3184 and 3186 of Title 18 of the United States Criminal Code, the Secretary [of State] is the U.S. official responsible for determining whether to surrender a fugitive to a foreign country by means of extradition. In order to implement the obligation assumed by the United States pursuant to Article 3 of the Convention, the Department considers the question of whether a person facing extradition from the U.S. "is more likely than not" to be tortured in the State requesting extradition when appropriate in making this determination.
>
> § 95.3 Procedures.
>
> (a) Decisions on extradition are presented to the Secretary only after a fugitive

has been found extraditable by a United States judicial officer. In each case where allegations relating to torture are made or the issue is otherwise brought to the Department's attention, appropriate policy and legal offices review and analyze information relevant to the case in preparing a recommendation to the Secretary as to whether or not to sign the surrender warrant.

(b) Based on the resulting analysis of relevant information, the Secretary may decide to surrender the fugitive to the requesting State, to deny surrender of the fugitive, or to surrender the fugitive subject to conditions.

22 C.F.R. §§ 95.2–95.3 (2000), as quoted in *Cornejo–Barreto* I, 218 F.3d at 1011–12.

Before these regulations were promulgated, the Ninth Circuit held that no judicial review of the Secretary of State's final decision to extradite was available. *Cornejo–Barreto* I, 218 F.3d at 1010 (*citing Lopez–Smith v. Hood*, 121 F.3d 1322, 1326 (9th Cir.1997)). The Ninth Circuit has understood section 2242(b) of the FARR Act as making clear the intention of Congress that the State Department would have initial responsibility for implementing Article 3 of the Torture Convention in the extradition context. *Cornejo–Barreto* I, 218 F.3d at 1012. The Ninth Circuit has also noted that section 2242(d) of the FARR Act "appears to preclude a facial challenge to the extradition procedures set out in the Department of State's regulations." *Cornejo–Barreto* I, 218 F.3d at 1013.

As for judicial challenges to the Secretary's decisions applying the regulations in particular cases, the Department's regulations provide that the Secretary's decisions "concerning surrender of fugitives for extradition are matters of executive discretion not subject to judicial review." *Id.* at 1012 (*quoting* 22 C.F.R. § 95.4). However, as discussed below, the Ninth Circuit

concluded in *Cornejo–Barreto* I that such particular decisions by the Secretary are subject to judicial review, based on statute, the rules of administrative law, and principles of habeas jurisdiction. *Id.*

## C. *CORNEJO–BARRETO* I

### 1. *Background*

In October of 1996, Ramiro Cornejo–Barreto, a Mexican citizen and lawful permanent resident of the United States, was arrested in the United States pursuant to a request by the Mexican government under the U.S.—Mexico extradition treaty. *Cornejo–Barreto* I, 218 F.3d at 1007. An extradition proceeding was held, in this district, before Magistrate Judge Elgin Edwards [No. SACV 96–1217–AHS(EE)], in which Cornejo–Barreto presented a defense to extradition based on Article 3 of the Torture Convention, alleging that he had been tortured by police in Mexico and was likely to be tortured again if extradited. *Id.* The magistrate judge found that, even excluding all evidence that might be tainted by torture, there was probable cause that Cornejo–Barreto committed extraditable offenses, and certified him as extraditable. *Id.* at 1008.

In September of 1997 Cornejo–Barreto challenged the extradition decision in a petition for writ of habeas corpus filed in this district [No. SACV 97–843–AHS], arguing that the extradition order violated Article 3 of the Torture Convention, the Fifth Amendment right to procedural due process, and the Eighth Amendment guarantee against cruel and unusual punishment. *Id.* In 1998 District Judge Alicemarie H. Stotler denied the petition, finding that the scope of habeas review was limited, that the Torture Convention was not self-executing, that the special nature of extradition proceedings defeated the Fifth Amendment claim, and that the Eighth Amendment claim did not apply because

an extradition proceeding was not, by law, a criminal proceeding. *Id.* at 1008–09. Cornejo–Barreto appealed, raising only the Torture Convention claim. *Id.* at 1009.

## 2. *The Panel's Decision*

In *Cornejo–Barreto* I, the panel discussed extradition and the history of the Torture Convention and its implementation in the FARR Act and attendant regulations. *Id.* at 1009–12. The panel found that the Secretary of State has a statutory duty, under the FARR Act, to carry out the dictates of Article 3 of the Torture Convention by determining "how best to ensure that the United States does not extradite an otherwise extraditable individual when 'there are substantial grounds for believing the person would be in danger of being subjected to torture ....' " *Id.* at 1012 (*quoting* FARR Act, section 2242(a)).

In Cornejo–Barreto's case, as in the present case, the government argued that the court should decline to review the Secretary's final decision, citing the regulatory provision that the Secretary's decisions " 'concerning surrender of fugitives for extradition are matters of executive discretion not subject to judicial review.' " *Cornejo–Barreto* I, 218 F.3d at 1012 (*quoting* 22 C.F.R. § 95.4). However, the panel rejected this argument, and found, as noted above, that "the underlying statute, as well as the background rules of administrative law and habeas jurisdiction require the opposite conclusion." *Id.* at 1012.

To reach this conclusion, the *Cornejo–Barreto* I panel first considered provisions of the Administrative Procedures Act ("APA"), 5 U.S.C. § 551 et seq., which "governs decision-making by most federal agencies." *Id.* at 1012. The APA guarantees "judicial review by federal courts of 'final agency action for which there is no other adequate remedy in a court.' " *Id.*

(*quoting* 5 U.S.C. § 704 (2000)). Here, the State Department falls within the APA's definition of "agency," and the Secretary's decision to surrender a person certified as extraditable is a final decision.[11] Final actions by a covered agency are subject to judicial review under the APA unless " '(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law.' " *Id.* at 1012–13 (*quoting* 5 U.S.C. § 701(a) (2000)). In this context, the FARR Act may preclude review of a facial challenge to the regulations promulgated by the State Department to implement the Torture Convention. *Id.* at 1013 (parsing FARR Act section 2242(d)). However, the FARR Act does not, in itself, bar judicial review of a challenge to the Secretary's application of the statute and regulations in a specific case. *Id.* Therefore, the *Cornejo–Barreto* I panel found that the exception under 5 U.S.C. § 701(a)(1) (where a statute itself precludes judicial review) does not apply in this context.

The panel next considered the exception under 5 U.S.C. § 701(a)(2) (where agency action is committed to agency discretion by law). *Id.* at 1013–15. The panel noted that "[t]he Supreme Court has explained that § 701(a)(2) precludes review only 'if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.' " *Id.* at 1013 (*quoting Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), and *citing Socop–Gonzalez v. INS*, 208 F.3d 838, 842–46 (9th Cir.2000) (holding that even when an agency was given discretion to decide the circumstances in which it would reopen a case, discretion did not shield the agency's action from review, because the agency itself set a standard for reopening)). The

---

**11.** By contrast, "agency," in this context, does not include the Congress, the courts, or military agencies in time of war. *Cornejo–Barreto* I, 218 F.3d at 1012–15 and nn. 7, 10.

panel found that the FARR Act imposed "a mandatory duty to implement Article 3 of the Torture Convention," and that, in an extradition context, this meant that the Secretary of State may not surrender a person likely to face torture. *Id.* at 1013–14. Thus:

> The FARR Act imposes a clear and nondiscretionary duty: the agencies responsible for carrying out expulsion, extradition, and other involuntary returns, must ensure that those subject to their actions may not be returned if they are likely to face torture. A reviewing court would have a clear standard against which to measure the Secretary's actions under the *Heckler* rule.

*Id.* at 1014 (*citing Heckler*, 470 U.S. at 830, 105 S.Ct. 1649).[12]

The *Cornejo–Barreto* I panel then considered that, although the statute imposed a mandatory duty on the Secretary, regulations implementing the statute include another provision stating that the Secretary's duty is discretionary. *Id.* at 1014 (*citing* 22 C.F.R. § 95.4 (2000) as providing that: "[d]ecisions of the Secretary concerning surrender of fugitives for extradition are matters of executive discretion not subject to judicial review."). The panel noted that, although courts generally defer to an agency's interpretation of the statute it administers, the courts are required to reject agency interpretations contrary to the intent of Congress. *Id.* (citations omitted). The panel rejected the government's argument that judicial review of the Secretary's final decisions was barred by 22 C.F.R. § 95.4, and, considering the mandatory language in both Article 3 of the Torture Convention and section 2242 of the FARR Act, observed that it would be contrary to both the treaty and the statute to find the Secretary's extradition deci-

sions wholly discretionary. *Id.* The panel noted that its interpretation of Congressional intent was consistent with international law, and that the courts "generally construe Congressional legislation to avoid violating international law.'" *Id.* (*citing Ma v. Reno*, 208 F.3d 815, 829 (9th Cir. 2000), *Weinberger v. Rossi*, 456 U.S. 25, 32, 102 S.Ct. 1510, 71 L.Ed.2d 715 (1982), and *Murray v. Charming Betsy*, 6 U.S. (2 Cranch) 64, 117–18, 2 L.Ed. 208 (1804)).

Having found "that the Secretary's duty to implement the FARR Act is non-discretionary and that the statute does not preclude review," the *Cornejo–Barreto* I panel held "that a fugitive fearing torture may petition for review of the Secretary's decision to surrender him." 218 F.3d at 1014. The panel went on to say that, under the APA, "[c]ourts reviewing such petitions will be required to set aside the Secretary's extradition decisions if they are found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* at 1015 (*quoting* 5 U.S.C. § 706(2)(A)(2000)). Having assumed, *arguendo*, that the Torture Convention is not self-executing, the panel noted that the FARR Act itself, in implementing the treaty, did not, either explicitly or implicitly, create a cause of action or a new grant of jurisdiction. *Id.* at 1011, 1015. As for APA, while it may provide a cause of action, it "is not an independent grant of jurisdiction." *Id.* at 1015 (*citing Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)). However, APA claims may be brought, for example, in declaratory judgment actions, mandamus petitions, and habeas petitions. *Id.* The panel concluded that, in this context, where no other statutory review provision is applicable and an extraditee would oth-

---

**12.** Here, also, the agency itself also set a standard for reviewing the Secretary's decision in regulations implementing the FARR

Act. *See* 22 C.F.R. § 95.3(a) and (b), as quoted above.

erwise have standing, a habeas petition under 28 U.S.C. § 2241 "is the most appropriate form of action for fugitives seeking review of the Secretary's extradition decisions." *Id.* at 1015–16 and nn. 12–13.[13]

The panel further concluded that, because the APA only provides review of a final agency action, an APA challenge to an extradition decision would not be ripe unless and until the Secretary made a final decision to surrender an extraditee who alleged a likelihood of torture. *Id.* at 1016. The panel, thus, affirmed the district court's denial of Cornejo–Barreto's petition, on the grounds that habeas corpus review is only available when no other relief is. *Id.* at 1017. However, the panel also directed that the denial "should be without prejudice to the filing of a new petition should the Secretary of State decide to surrender Cornejo–Barreto." *Id.*

The panel clearly stated both the reasons for denying the petition and the nature of that denial without prejudice at the beginning of its decision:

> We conclude that the Secretary of State first must make a determination as to whether to extradite petitioner in light of his claim that the requesting government is likely to torture him on surrender. 28 U.S.C. § 2241 confers jurisdiction only when *no other relief is* available to petitioner.

218 F.3d at 1007. At that point the panel added, in a footnote:

> Were APA review not available, we would be required to reach the merits of the instant petition.

*Id.* at n. 2.

At the end of its decision, the *Cornejo–Barreto* I panel again summarized its conclusions regarding judicial review of a Torture Convention claim in an extradition context as follows:

> The individual's right to be free from torture is an international standard of the highest order. Indeed, it is a *jus cogens* norm [footnote omitted]: the prohibition against torture may never be abrogated or derogated. [footnote omitted] We must therefore construe Congressional enactments consistent with this prohibition. In the extradition context, the approach we describe here allows us to give full effect to Congressional legislation without creating a conflict between domestic and international law. We recognize that Congress intended the Secretary of State to act as the "competent authority" charged with enforcing Article 3 of the Convention. We also recognize that Congress did not limit judicial review of the Secretary's decisions under long-standing APA procedures. An extraditee ordered extradited by the Secretary of State who fears torture upon surrender, therefore, may state a claim cognizable under the APA that the Secretary of State has breached her duty, imposed by the FARR Act, to implement Article 3 of the Torture Convention. Such a claim, brought in a petition for habeas corpus, becomes ripe as soon as the Secretary of State determines that the fugitive is to be surrendered to the requesting government.

*Id.* at 1016–17. (These two passages are quoted and discussed more fully below.)

### 3. *Subsequent History*

In June of 2001, the Secretary of State signed a warrant of extradition for Cornejo–Barreto, and in July of 2001, Cornejo–Barreto filed a new habeas petition in this

---

**13.** The *Cornejo–Barreto* I panel found that the FARR Act did not limit habeas corpus review, and noted that habeas jurisdiction cannot be repealed by implication. 218 F.3d at 1016 n. 13.

district [No. SACV 01–662–AHS], challenging the Secretary's final decision under the APA and the Torture Convention, as authorized by *Cornejo–Barreto* I. [*See* Order Denying Petition, filed July 9, 2002, SACV 01–662, dkt. no. 11.] The government opposed the petition, arguing that the court lacked jurisdiction to review the Secretary's decision (because judicial review of an extradition claim based on the Torture Convention was precluded by law), and because the opinion to the contrary in *Cornejo–Barreto* I was non-binding dicta. [*Id.,* pp. 4–6.] On habeas review, the district court found that *Cornejo–Barreto* I, in relevant part, was not dicta and was binding on a lower court, and that the district court could review the Secretary's final decision under the APA as discussed in *Cornejo–Barreto* I. [*Id.,* pp. 6–7.] However, in reviewing Cornejo–Barreto's claims, the district court found that, on the record, the petitioner had not shown that the Secretary's decision was arbitrary or otherwise unlawful and accordingly denied the petition on its merits. [*Id.,* pp. 7–9.] Cornejo–Barreto then appealed. [SACV 01–662, dkt. no. 18.]

On August 16, 2004, a different Ninth Circuit panel affirmed the district court's judgment in *Cornejo–Barreto v. Siefert,* 379 F.3d 1075 (9th Cir.2004) ("*Cornejo–Barreto* II"). The *Cornejo–Barreto* II panel found that pertinent parts of *Cornejo–Barreto* I were non-binding dicta and were also not binding as "law of the case." *Cornejo–Barreto* II, 379 F.3d at 1082–83. The second panel then found, contrary to the first panel, that the Secretary's final decision to surrender Cornejo–Barreto to Mexico was not subject to judicial review because such review is barred under the "Rule of Non–Inquiry," neither the Torture Convention nor the FARR Act superceded that rule, and neither the APA nor habeas corpus provide an alternate basis for judicial review of the Secretary's final decision to extradite. 379 F.3d at 1083–89.

A petition for en banc review of the *Cornejo–Barreto* II's panel decision was granted on Oct 19, 2004. *Cornejo–Barreto v. Siefert,* 386 F.3d 938 (9th Cir.2004). While the en banc proceeding was pending, Mexico withdrew its request to extradite Cornejo–Barreto, and the government moved to dismiss proceedings in the district court and the circuit court. [SACV 01–662, dkt. nos. 28–29.] On November 19, 2004, an en banc panel issued *Cornejo–Barreto v. Siefert,* 389 F.3d 1307 (9th Cir. 2004) ("*Cornejo–Barreto* III"), in which it ordered the district court judgment (in SACV 01–662) vacated as moot, ordered the panel opinion in *Cornejo–Barreto* II vacated, denied the government's request to vacate other published opinions in the case, remanded the case to the district court with instructions to dismiss, and ordered Cornejo–Barreto released. 389 F.3d at 1307.

#### 4. *Cornejo–Barreto I as Precedent*

Pursuant to the en banc order in *Cornejo–Barreto* III, the vacated panel decision in *Cornejo–Barreto* II does not constitute precedent. *Animal Legal Defense Fund v. Veneman,* 490 F.3d 725, 729–30 (9th Cir.2007) (*citing* and *quoting U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship,* 513 U.S. 18, 22, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994) (vacating "removes all precedential value from a decision, rendering an opinion a legal nullity")). *Cornejo–Barreto* I, however, was not vacated and, as previously noted in orders issued by the district court in Petitioner's first habeas petition in this case, accordingly continues to be recognized as controlling authority in the Ninth Circuit. [*See* Order Denying Stay at 8 n. 26, CV 07–6387, dkt. no. 31 (stating that "the opinion in *Cornejo–Barreto* I remains binding authority" and citing *Prasoprat,* 421 F.3d at 1016 n. 5, as, itself, citing *Cornejo–Barreto* I as authority that an extraditee who fears torture is not barred

from seeking habeas review of the Secretary's final decision).][14]

Given that the *Cornejo–Barreto* I decision is still authoritative, the next question is what part of the opinion constitutes binding precedent, and whether any significant portion is non-binding dicta. Respondent's argument on this point appears to be that the actual holding in *Cornejo–Barreto* I is simply that a claim under the Torture Convention is not ripe for review when the Secretary has not made a final decision to extradite. [R.App. at 35 et seq.] If so, then the panel's discussion of a claim that might be brought in a second petition, if and only if the Secretary made a final decision to extradite, would, arguably, be mere dicta.[15]

In its own words, however, the *Cornejo–Barreto* I panel presented its holding as something more than this. As noted above, the opinion's "conclusion" is stated twice. At the beginning of the opinion, the conclusion is given as follows:

We conclude that the Secretary of State first must make a determination as to whether to extradite petitioner in light of his claim that the requesting government is likely to torture him upon surrender. 28 U.S.C. § 2241 confers jurisdiction only when no other relief is available to petitioner.[Footnote] At this point it is still possible that the Secretary will refuse to surrender the petitioner. If the Secretary decides to surrender him, petitioner then will have recourse to federal court.

Examining federal legislation implementing the Torture Convention, we conclude that the Administrative Procedure Act ("APA") allows an individual facing extradition who is making a torture claim to petition, under habeas corpus, for review of the Secretary of

---

**14.** *See also* Order Denying Reconsideration at 11 n. 20, dkt. no. 37, and Order Denying Petition at 33 n. 76, dkt. no. 43, in CV 07–6387. For a contrary interpretation, *see Hoxha v. Levi*, 465 F.3d 554, 564–65 n. 16 (3d Cir.2006) (stating that neither *Cornejo–Barreto* I nor *Cornejo–Barreto* II are binding precedent in the Ninth Circuit).

*See also Mironescu v. Rice*, 2006 WL 167981, *5 (M.D.N.C., Jan. 20, 2006) (No. 1:05–cv–00683) ("*Cornejo–Barreto* I ... has now sprung back to life and remains good law") (*citing Prasoprat*, 421 F.3d at 1012 n. 1). As in the present case, Miranescu raised a Torture Convention claim in a second habeas petition after a final decision to extradite him, and the government moved to dismiss on grounds raised in the present case. The district court accepted the reasoning of *Cornejo–Barreto* I, denied the motion to dismiss, and ordered the government to produce the administrative record underlying the Secretary's decision for *in camera* inspection (also allowing filing under seal). 2006 WL 167981 at *10. The government appealed. In *Mironescu v. Costner*, 480 F.3d 664, 668–673 (4th Cir.2007), the Fourth Circuit first found that habeas review of a final extradition decision—whether based on a claim under the Constitu-

tion, a treaty, or a statute—was not barred by the Rule of Non–Inquiry. However, the *Mironescu* panel concluded that review of such a claim was barred by section 2242(d) of the FARR Act itself (providing for review of a Torture Convention claim only by a petition for review of a final order of removal in an immigration case, with no mention of habeas review in an extradition case). 480 F.3d at 674. The *Mironescu* panel found that this barred review of such a claim in an extradition case. *Id.* [Like *Cornejo–Barreto* I, the district court in *Mironescu* had found, on the contrary, that lack of a reference should not be construed as barring habeas review by implication.] Miranescu filed a petition for writ of certiorari, but the Supreme Court dismissed it in *Mironescu v. Costner*, 552 U.S. 1135, 128 S.Ct. 976, 169 L.Ed.2d 799 (2008) (mem.). A district court order filed September 17, 2007, noted that the government had withdrawn its request to extradite Miranescu. Case No. 1:05cv00683, dkt. no. 32.

**15.** This reading would equate the holding in the case with the concurrence by Judge Kozinski, who did not join in the part of the opinion containing the discussion in question. 218 F.3d at 1017.

State's decision to surrender him. We affirm the district court but direct that the denial be without prejudice.

*Cornejo–Barreto* I, 218 F.3d at 1007. The footnote indicated above states: "Were APA review not available, we would be required to reach the merits of the instant petition." *Id.* at n. 2. At the end of the opinion, the conclusion is restated as follows:

> The individual's right to be free from torture is an international standard of the highest order. Indeed, it is a *jus cogens* norm [footnote omitted]: the prohibition against torture must never be abrogated or derogated. [Footnote omitted] We must therefore construe Congressional enactments consistent with this prohibition. In the extradition context, the approach we describe here allows us to give full effect to Congressional legislation without creating a conflict between domestic and international law. We recognize that Congress intended the Secretary of State to act as the "competent authority" charged with enforcing Article 3 of the Convention. We also recognize that Congress did not limit judicial review of the Secretary's decisions under long-standing APA procedures. An extraditee ordered extradited by the Secretary of State who fears torture upon surrender, therefore, may state a claim cognizable under the APA that the Secretary of State has breached her duty, imposed by the FARR Act, to implement Article 3 of the Torture Convention. Such a claim, brought in a petition for habeas corpus, becomes ripe as soon as the Secretary of State determines that the fugitive is to be surrendered to the requesting government.

> We may not reach the merits of Cornejo–Barreto's claim at this time. Habeas corpus review is available only when no other relief is available.

> We therefore AFFIRM the district court's denial of the petition for habeas corpus but direct that it should be without prejudice to the filing of a new petition should the Secretary of State decide to surrender Cornejo–Barreto.

218 F.3d at 1016–17.

Plainly, the *Cornejo–Barreto* I panel did not simply decline to reach a possible Torture Convention claim that might arise if the Secretary finally decided to surrender Cornejo–Barreto. Instead, in a carefully reasoned decision, the panel found that Cornejo–Barreto could state a cognizable claim under the Torture Convention and the FARR Act, that he could obtain review of such a claim under the APA and the habeas corpus statute if the Secretary made a final decision to extradite, that if such review were not available the panel "would be required to reach the merits" of the Torture Convention claim, but that, since such review would be available later if needed, and because habeas review was only available when no other relief was, a Torture Convention claim was not yet ripe. On this basis, the panel affirmed the district court's denial of habeas corpus relief, but specifically instructed that the denial be without prejudice to the filing of a new petition if the Secretary finally decided to extradite. Thus, the panel included the finding of a cognizable claim under the Torture Convention, the FARR Act, the APA, and the habeas corpus statute as part of its holding in this case, and as a necessary basis for both parts of its decision—that the pending petition be denied as not ripe, but that the denial be without prejudice to raising the claim in a new habeas petition if the claim became ripe.

Considering such clear statements as to the scope and reasoning of the *Cornejo–Barreto* I holding, Respondent's argument that the decision is largely dicta is unpersuasive. Respondent cites two different

definitions of "dicta" from concurring opinions in *United States v. Johnson,* 256 F.3d 895 (9th Cir.2001) (en banc). [R.App., dkt. no. 17, at 35–37.] First, according to Judge Kozinski:

> We hold ... that where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense.

*Johnson,* 256 F.3d at 914 (Kozinski, J., concurring). Judge Kozinski went on to define "dicta" narrowly as a statement of law "made casually and without analysis," or "uttered in passing without due consideration of the alternatives," or "merely a prelude to another legal issue that commands the panel's full attention, ..." *Id.* at 915 (cited, e.g., in *Jones v. City of Los Angeles,* 444 F.3d 1118, 1135 (9th Cir. 2006)). The discussion of the Torture Convention claim in *Cornejo–Barreto* I was not dicta under this definition; the *Cornejo–Barreto* I panel confronted an issue germane to resolving the case, and resolved it after reasoned consideration in a published opinion. The discussion in question could hardly be characterized as casual, without analysis, uttered in passing, or merely a prelude to another issue.

Respondent also refers to a different definition cited by Judge Tashima, under which "dicta" is defined as observation or remarks "not necessarily involved in the case or essential to its determination." *Johnson,* 256 F.3d at 920 (Tashima, J., concurring) (quoting definition from Black's Law Dictionary adopted in *Export Group v. Reef Indus., Inc.,* 54 F.3d 1466, 1472 (9th Cir.1995)). However, it was clearly the opinion of the majority in *Cor-*

*nejo–Barreto* I that its analysis of the Torture Convention issue was necessarily involved in the case and essential to its determination as stated.

▇▇▇ Therefore, whether or not the *Cornejo–Barreto* I panel was correct in its decision, that decision, including its resolution of the Torture Convention issue, is binding on this court so long as it remains good law in the Ninth Circuit; that is, although Respondent plainly disagrees with the circuit panel's conclusions in *Cornejo–Barreto* I, and might even argue compelling that the panel erred somehow in one respect or another, this court is bound by those conclusions insofar as they apply to the present case. *See, e.g., Hart v. Massanari,* 266 F.3d 1155, 1175 (9th Cir.2001) ("A district court bound by circuit authority, for example, has no choice but to follow it, even if convinced that such authority was wrongly decided.") [16]

## D. RESPONDENT'S ARGUMENTS ON PETITIONER'S APA CLAIM

In the present Petition, Petitioner asserts a claim under the Torture Convention in the form of a cause of action under the APA in light of *Cornejo–Barreto* I as discussed above. For purposes of this court's consideration, Respondent's arguments for dismissal of this claim fall broadly into two categories: arguments that essentially challenge the correctness of legal determinations made in *Cornejo–Barreto* I, and arguments that *Cornejo–Barreto* I has been superseded. For the reasons that follow, and in light of *Cornejo–Barreto* I's status as binding authority, none of Respondent's arguments warrants dismissal of Petitioner's APA claim.

---

**16.** "Once a [circuit court] panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court." *Hart,* 266 F.3d at 1171. "Or unless Congress changes the law." *Id.* n. 28.

### 1. *The Rule of Non–Inquiry and the Torture Convention as Implemented*

■ Respondent argues, in general, that the Rule of Non–Inquiry precludes this court's review of the Secretary's final decision to surrender Petitioner, and that nothing in the Torture Convention, the FARR Act, or the APA overcomes that bar. [R.App. at 27, et seq.] In this context, Respondent begins by stating that, because the Torture Convention is not self-executing, Article 3 of the Convention, by itself, does not give Petitioner a private cause of action or confer jurisdiction on this court. [*Id.*] This basic proposition is not disputed; nothing in the relevant case law, this court's prior orders, or Petitioner's claim suggests that the Torture Convention is self-executing. On the contrary, as noted above, the *Cornejo–Barreto* I panel itself accepted this position, at least *arguendo. Cornejo–Barreto* I, 218 F.3d at 1011 n. 6. The panel also acknowledged that an extraditee could not bring a claim under the Torture Convention at all until the Convention had been implemented through legislation and regulations. *See id.* at 1009 n. 5 ("rule of non-inquiry" generally barred such claims until superseded by implementing legislation); *id.* at 1010 (*citing Lopez–Smith v. Hood,* 121 F.3d 1322, 1326 (9th Cir.1997) (before implementing legislation and regulations Ninth Circuit held such claims not reviewable)). Furthermore, as discussed above, even after the Convention was implemented, an extraditee could not bring a Torture Convention claim in an initial extradition proceeding or in a habeas petition challenging the extradition certification.[17]

As in *Cornejo–Barreto,* however, the crucial issue here is whether an extraditee can bring a Torture Convention claim after the Secretary of State has made a final decision to surrender the extraditee, and whether a district court has jurisdiction to review such a claim. The *Cornejo–Barreto* I panel found a narrow opening for such a claim by reasoning that the Torture Convention, as implemented by statute and regulation, imposed a mandatory duty on the Secretary not to surrender an extraditee likely to be tortured, and concluding that an extraditee could challenge the Secretary's surrender decision as arbitrary under the APA and that a district court would have jurisdiction to review such a claim in a habeas proceeding. In sum, as stated by Respondent, the *Cornejo–Barreto* I panel found jurisdiction to review the Secretary's action under 28 U.S.C. § 2241, and a cause of action and a limited waiver of sovereign immunity in the APA. [R.App. at 27 n. 7.] Respondent advances a series of arguments addressing the merit of this holding.

#### a. Respondent's Argument on the FARR Act

■ As noted above, Respondent construes the panel's discussion of the FARR Act in *Cornejo–Barreto* I as non-binding dicta and rejects the analysis as substantively erroneous. Respondent argues that, like the Torture Convention itself, the FARR Act implementing it does not provide a cause of action for a claim under the Convention or a grant of jurisdiction for a court to review such a claim. [R.App. at 29 et seq.] Respondent's argument is based on a reading of the text of the

---

17. Thus, this court has found in prior decisions that Petitioner could not bring a Torture Convention claim in his initial extradition proceeding or his first habeas petition challenging the extradition decision. [*See* Certifi-cation at 10 n. 12, dkt. no. 72, CV 04–10097; *see also generally* Order Denying Stay, dkt. no 31, Order Denying Reconsideration, dkt. no. 37, and Order Denying Petition, dkt. no. 43 in CV 07–6387.]

FARR Act which differs from that followed by the *Cornejo–Barreto* I panel.

In full, section 2242(d) of the FARR Act states as follows:

Notwithstanding any other provision of law, and except as provided in the regulations described in subsection (b), no court shall have jurisdiction to review the regulations adopted to implement this section, and nothing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under the Convention or this section, or any other determination made with respect to the application of the policy set forth in subsection (a), except as part of the review of a final order of removal pursuant to section 242 of the Immigration and Nationality Act (8 U.S.C. 1252).

FARR Act, section 2242(d). In interpreting this passage, Respondent reads the text, in pertinent part, as follows:

'[N]otwithstanding any other provision of law … nothing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under the [CAT] or this section … except as part of the review of a final order of removal [in immigration cases].'

[R.App. at 29, brackets and ellipsis by Respondent.] Respondent understands this text as meaning that the FARR Act expressly precluded any federal court jurisdiction over Torture Convention claims except in circuit court review of final immigration removal orders. [R.App. at 29–30.] In regard to extradition, Respondent argues that the statute clearly indicates that "Congress did not intend to abolish the Rule of Non–Inquiry and provide judicial review through the FARR Act." [*Id.*]

The *Cornejo–Barreto* I panel treated this provision differently, in effect reading section 2242(d) as falling into two "clauses." The panel understood "Clause I" as

limiting judicial review of the regulations promulgated by the Secretary and as apparently precluding a facial challenge to the regulations, quoting the first part of section 2242(d) as follows:

'[n]otwithstanding any other provision of law, and except as provided in the regulations [promulgated by the Secretary], no court shall have jurisdiction to review the regulations adopted to implement this section …'

*Cornejo–Barreto* I, 218 F.3d at 1013. The panel understood "Clause II" as meaning that the FARR Act did not provide a new grant of jurisdiction or imply a cause of action such as a Bivens claim, quoting the second part of section 2242(d) (erroneously cited as section 2242(b)) as follows:

'[N]othing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under the Convention or this section, or any other determination made with respect to the application of the policy set forth in subsection (a), except as part of the review of a final order of removal pursuant to section 242 of the Immigration and Nationality Act (8 U.S.C. 1252).'

218 F.3d at 1015. The panel concluded that, although the FARR Act did not provide a new grant of jurisdiction, it also did not withdraw jurisdiction where it already existed. *Id.* at 1015–16 and n. 13. Thus, the panel understood the FARR Act as imposing a duty on the Secretary of State and the APA as providing a cause of action for arbitrary failure to carry out that duty, with the habeas statute providing district court jurisdiction over such a cause of action, unaffected by section 2242(d) of the FARR Act. *Id.* at 1014–16.

It may be that Respondent's reading of section 2242(d) is equally as plausible as the one adopted in *Cornejo–Barreto* I, and that, if Respondent's reading is correct, it would follow that no jurisdiction would lie

in an APA claim such as Petitioner makes here. However, whether or not the interpretation of the FARR Act in *Cornejo–Barreto I* is correct, that decision is binding on this court in the absence of some superseding authority, and Respondent's contrary reading of the FARR Act does not itself constitute such authority. Therefore, this court must reject Respondent's argument that the present Petition should be dismissed because the FARR Act bars federal court review of Torture Convention claims in any proceeding other than a petition for review of a final order of removal.

### b. Respondent's Argument on Implementing Regulations

■ Respondent's next argument for dismissal is that State Department regulations implementing the FARR Act include a provision barring judicial review of the Secretary's final decision to surrender an extraditee. [R.App. at 30–31.] Respondent is correct that State Department regulations include a provision stating that final extradition decisions by the Secretary are discretionary and not subject to any judicial review:

> Decisions of the Secretary concerning surrender of fugitives for extradition are matters of executive discretion not subject to judicial review. Furthermore, pursuant to section 2242(d) of the [FARR Act], notwithstanding any other provision of law, no court shall have jurisdiction to review these regulations, and nothing in section 2242 shall be construed as providing any court jurisdiction to consider or review claims raised under the Convention or section 2242, or any other determination made with respect to the application of the policy set forth in section 2242(a), except as part of the review of a final order of removal pursuant to section 242 of the Immigration and Nationality Act (8

U.S.C. 1252), which is not applicable to extradition proceedings.

22 C.F.R. § 95.4.

The *Cornejo–Barreto I* panel addressed and considered this regulation, but despite the statement in section 95.4, found that the Secretary's duty (under the FARR Act and the Torture Convention) not to surrender an extraditee likely to be tortured to be mandatory rather than discretionary. 218 F.3d at 1012–14. The panel further concluded that, although courts generally defer to an agency's construction of a statute it administers, the courts must reject a construction contrary to Congressional intent, and the courts, not executive agencies, are the final authority on statutory construction. 218 F.3d at 1014. The panel then expressly rejected this provision of the regulations as contrary to statute, and, so long as *Cornejo–Barreto I* remains good law this court is bound by the panel's interpretation.

### c. Respondent's Argument on the APA

Respondent also argues that the APA provides no basis for judicial review of the Secretary's final decision to surrender Petitioner, because, although the APA waives sovereign immunity over certain suits challenging administrative agency actions and seeking equitable relief, the APA does not waive immunity if statutes preclude judicial review. [R.App. at 32, *citing* 5 U.S.C. § 701(a)(1).] Here, Respondent essentially repeats the argument that judicial review of the Secretary's final extradition decisions is precluded under either the FARR Act (as discussed above) or the REAL ID Act (as discussed below). In that respect, this does not present a separate argument for dismissal of Petitioner's claim: if review of the Secretary's extradition decision is expressly precluded by statute, such review is not available under the APA; however, if review is not barred under the statutes in question, the APA

limit on waiver of sovereign immunity has no application.

 Respondent further argues that review under the APA is not available here because the APA does not waive immunity for suits challenging agency action that is committed by law to agency discretion. [R.App. at 34, *citing* 5 U.S.C. § 701(a)(2).] Again, this depends on whether the Secretary's final decision to surrender an extraditee is an action committed by law to agency discretion: here, the State Department claims that the action in question is discretionary, the Ninth Circuit has held in *Cornejo–Barreto* I that it is not, and this court is bound to follow Ninth Circuit law.[18]

 Finally, Respondent notes that the APA does not overcome other limitations on judicial review or affect the court's power to dismiss an action on any other appropriate legal or equitable ground. [R.App. at 33, *citing* 5 U.S.C. § 702.] Respondent argues that this precludes judicial review here because such review would require judicial intrusion into sensitive matters of foreign relations exclusively entrusted to the political branches of government. [R.App. at 33–34.] However, Respondent has not shown that judicial review in the present case—to determine whether the Secretary's final decision to surrender Petitioner was arbitrary—would necessarily require extensive or extraordinary judicial intrusion into sensitive matters.[19] As discussed below, the scope of review under the APA is deferential, and could fall at various points within a wide range given the nature of the decision at issue. There is no basis to conclude at this point that judicial review could not be conducted with appropriate sensitivity to concerns of the political branches and in such a way as to protect genuinely sensitive or properly confidential matters while still affording Petitioner a hearing on a claim that the Secretary's decision was arbitrary. Therefore, it does not appear that any overriding legal or equitable ground requires dismissal of Petitioner's APA claim at this time.

### 2. *Respondent's Argument on the Munaf Decision*

 As noted above, a district court is bound by circuit authority unless over-

---

**18.** It is clear that, under the regulation, the Secretary has discretion *not to surrender* a fugitive certified as extraditable. However, under the analysis in *Cornejo–Barreto* I, the Secretary does not have discretion *to surrender* an extraditee who is likely to face torture. *Cornejo–Barreto* I, 218 F.3d at 1014.

**19.** There is no evident reason that matters considered by the Secretary in deciding whether to surrender an extraditee are necessarily or invariably more sensitive than matters considered by the court in the judicial part of the extradition process. For example, courts must decide whether evidence supporting probable cause is credible in light of allegations that the evidence was obtained through torture by foreign officials. *See, e.g., Cornejo–Barreto* I, 218 F.3d at 1007 [and district court case SACV 96–1217; for Petitioner's case *see also* Certificate of Extraditability in CV 04–10097, dkt. no. 72]. It is not clear how allegations that foreign officials actually tortured a witness are less sensitive than allegations that officials are likely to torture the extraditee in the future. Furthermore, although it did not arise in Petitioner's case, extradition courts often have to decide whether a charged offense falls under the exception for political offenses. *Cornejo–Barreto* I, 218 F.3d at 1009 n. 4 (*citing Quinn v. Robinson*, 783 F.2d 776, 786–87 (9th Cir.1986) (extraditable offense must not be subject to "political offense" exception)); *accord Vo v. Benov*, 447 F.3d 1235, 1240 et seq. (9th Cir.2006) (applying *Quinn*). Such a judicial decision can easily involve equally sensitive issues of foreign relations. *Quinn*, 783 F.2d at 788 (rejecting argument that judiciary should not decide whether political offense objection applies because "different pronouncements from the executive and judiciary ... could embarrass the government ...").

ruled by the Supreme Court, or unless Congress changes the law. *Hart,* 266 F.3d at 1171 and n. 28. When circuit authority is overruled by the Supreme Court, a district court or a circuit court panel is no longer bound by that authority, and need not wait until the authority is also expressly overruled by an en banc panel. *See Miller v. Gammie,* 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc). Furthermore, "circuit precedent, authoritative at the time it was issued, can be effectively overruled by subsequent Supreme Court decisions that 'are closely on point,' even though those decisions do not expressly overrule the prior circuit precedent." *Miller,* 335 F.3d at 899 (quoting *Galbraith v. County of Santa Clara,* 307 F.3d 1119, 1123 (9th Cir.2002)). Under this principle, although the issues decided by the Supreme Court in the new case need not be identical to those decided in the prior circuit case, the Supreme Court "must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller,* 335 F.3d at 900.

Here, Respondent argues that Petitioner's claim under the APA and the Torture Convention should be dismissed, despite the ruling in *Cornejo–Barreto* I, because of the reaffirmation of the Rule of Non–Inquiry by the Supreme Court in *Munaf v. Geren,* 553 U.S. 674, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008) (unanimous decision). [R.App. at 3–5, 9–12, and 22–26.] *Munaf* was not an extradition case, it did not expressly overrule *Cornejo–Barreto* I (or any other similar extradition case), and did not decide issues identical to those decided in *Cornejo–Barreto* I. Therefore, the question this court must consider is whether the *Munaf* decision was closely on point in the sense that it undercut the theory or reasoning underlying *Cornejo–Barreto* I in such a way that the cases are clearly irreconcilable.

The two petitioners in *Munaf* were persons with joint citizenship (one American and Jordanian, the other American and Iraqi) who voluntarily traveled to Iraq and allegedly committed criminal acts there. *Munaf,* 128 S.Ct. at 2214–15. The petitioners were detained under the custody of the Multinational Force—Iraq ("MNF–I") operating under the command of United States military officers, and they remained in the physical custody of MNF–I forces but faced criminal prosecution by the Iraqi courts. *Id.* The petitioners each sought habeas relief in the United States District Court for the District of Columbia, seeking to prevent transfer from United States or MNF–I custody to Iraqi custody. *Id.* One petitioner, Omar, obtained a preliminary injunction barring removal from United States or MNF–I custody. The government appealed, and the Court of Appeals for the District of Columbia Circuit upheld the district court's exercise of habeas jurisdiction, but limited the extent of the injunction. *Munaf,* 128 S.Ct. at 2214–15 (citing *Omar v. Harvey,* 479 F.3d 1 (D.C.Cir.2007)). The other petitioner, Munaf, also brought a habeas petition in the District of Columbia, but the district court dismissed it for lack of jurisdiction. *Munaf,* 128 S.Ct. at 2215 (citing *Mohammed v. Harvey,* 456 F.Supp.2d 115 (D.D.C. 2006)). The Court of Appeals affirmed. *Munaf, id.* (citing *Munaf v. Geren,* 482 F.3d 582 (D.C.Cir.2007)). The Supreme Court granted certiorari and consolidated the cases. *Munaf,* 128 S.Ct. at 2216.

On review, the Court first found that the federal district court did have habeas jurisdiction over the petitioners as United States citizens in the custody of the United States. *Munaf,* 128 S.Ct. at 2216–18. However, the Court went on to deny habeas relief on the merits, finding that the petitioners were not entitled to habeas corpus relief either in the form of an injunction preventing transfer to Iraqi authori-

ties, or in the form of an order for release in a way that precluded transfer to Iraqi authorities. *Id.* at 2218 et seq.

The *Munaf* Court noted that the petitioners, although seeking habeas relief, were not simply seeking release from United States military custody (which would allow their apprehension by Iraqi authorities), but an order requiring the United States military in Iraq to shelter them from Iraqi prosecution for crimes allegedly committed in Iraq. *Id.* at 2221. The petitioners did not dispute that they voluntarily traveled to Iraq, that they were detained within the sovereign territory of Iraq, that they were alleged to have committed serious crimes in Iraq under Iraqi law, and that, if they were not in MNF–I custody, Iraq could arrest them and prosecute them under Iraqi law. *Id.* The Court concluded that Iraq had a sovereign right to prosecute the petitioners for offenses under its laws allegedly committed within its borders. *Id.* at 2221–22. The Court further concluded that this was true even though the petitioners were American citizens, and despite their claims that the Due Process Clause protected them from a transfer leading to a trial that would violate their rights under the United States Constitution. *Id.* at 2222. The Court cited, as precedent, *Wilson v. Girard*, 354 U.S. 524, 77 S.Ct. 1409, 1 L.Ed.2d 1544 (1957) (habeas court could not enjoin transfer to Japanese custody of American serviceman charged with killing Japanese woman in Japan despite claim that Japanese trial would violate rights under United States Constitution) and *Neely v. Henkel,* 180 U.S. 109, 21 S.Ct. 302, 45 L.Ed. 448 (1901) (habeas relief not available to bar extradition of American citizen to Cuba despite claim that Cuban law did not provide panoply of rights protected by United States Constitution). *Munaf,* 128 S.Ct. at 2222–23.

Finally, the *Munaf* Court rejected the petitioners' claim for relief based on allegations that transfer to Iraqi custody was likely to result in torture. *Id.* at 2225 et seq. The Court first noted the general principle that habeas corpus has been held not to be a valid means of inquiry into the treatment a petitioner may receive in a requesting state, and that such considerations are generally "to be addressed by the political branches, not the judiciary." *Id.* at 2225. The Court then observed that the petitioners had briefly argued "that their claims of potential torture may not be readily dismissed on the basis of these principles because the FARR Act prohibits transfer when torture may result." *Id.* at 2226. However, the *Munaf* Court held that the two petitioners had not raised a claim under the FARR Act, and declined to consider the question. *Id.* Nevertheless, the Court went on, in a footnote, to suggest several issues that might arise on a claim under the FARR Act: (1) that the FARR Act and Article 3 of the Torture Convention referred to expelling, returning, or extraditing a person to another state, while the present case involved transferring a person located in Iraq to the Government of Iraq; and (2) that "claims under the FARR Act may be limited to certain immigration proceedings." *Munaf,* 128 S.Ct. at 2226–27 n. 6.

Respondent's application of *Munaf* to the present case is problematic in light of several significant differences between the cases. First, the *Munaf* Court found habeas jurisdiction in the district court to review the petitioners' claims, but then rejected those claims on their merits. Here, the present issue is whether this court has jurisdiction to review Petitioner's Torture Convention claim; the merits of the claim have not yet been addressed. Second, Petitioner's situation (as an extraditee in custody in this district pending surrender to the Philippines and seeking

release from custody) is different than the situations presented in *Munaf* (detainees in military custody in Iraq seeking to prevent transfer to Iraqi custody) or *Wilson* (American serviceman in Japan seeking to prevent transfer to Japanese custody). The *Neely* case is closer but also arguably distinguishable. In *Neely*, an American citizen fought extradition to Cuba claiming that a Cuban court would not afford him Constitutional protections available in an American court. In the present action, Petitioner is contesting the Secretary of State's decision to surrender him—despite allegations of likely torture and the Secretary's duty pursuant to the FARR Act—as arbitrary under the APA. Here, Petitioner's APA claim does not directly address his likely treatment in the Philippines, but rather whether the Secretary has adequately considered that issue as required by statute and treaty.

Finally, Petitioner's claim in the present action is explicitly premised on the FARR Act, which the Court declined to address in *Munaf* as not properly raised. The *Munaf* Court also noted that the FARR Act, on its face, appeared unlikely to apply to a detainee already in the requesting country and not subject to being "returned" there. On the other hand, the *Munaf* Court also noted the provision in the FARR Act that might limit Torture Convention claims to certain immigration proceedings (as Respondent has argued and as discussed above). However, the *Munaf* Court did not reach or decide that question.

Thus, while some issues addressed in *Munaf* may be relevant to issues in the present action, and while Respondent's argument regarding the import of *Munaf's* affirmation of the Rule of Non–Inquiry would undoubtedly warrant consideration in an analysis unconstrained by otherwise controlling circuit authority, the *Munaf* Court plainly did not reach a holding that undercut the theory or reasoning underlying *Cornejo–Barreto* I in such a way that the two cases are clearly irreconcilable. On the contrary, *Munaf* is not clearly on point with respect to the jurisdictional issue now before this court, and *Munaf* did not explicitly or implicitly overrule the holding in *Cornejo–Barreto* I, nor did it somehow authorize this court to disregard that Ninth Circuit holding. Accordingly, Respondent's argument relying on *Munaf* does not support dismissal on the ground that this court lacks jurisdiction to review Petitioner's present claims.

### 3. *Respondent's Argument on the REAL ID Act*

As noted above, circuit authority may also cease to be binding if Congress changes the law. *Hart,* 266 F.3d at 1171 n. 28 (*citing Van Tran v. Lindsey,* 212 F.3d 1143, 1149 (9th Cir.2000)).[20] Respondent contends that the present Petition must be dismissed because judicial review of Torture Convention claims in such a case is expressly barred by Section 106 of the REAL ID Act of 2005, Pub.L. 109–13, 119 Stat. 231, 310, codified at 8 U.S.C. § 1252, and that this statute supersedes

**20.** In *Van Tran,* the Ninth Circuit referred to prior circuit authority on the standard of review applied to mixed questions of law and fact in habeas actions, and noted that circuit law on the standard of review had been superceded by subsequent statute, the Anti–Terrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. 104–132, 110 Stat. 1214, and a Supreme Court decision, *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The *Van Tran* panel's attempt at articulating the new standard of review was, itself, effectively overruled by the Supreme Court's holding in *Lockyer v. Andrade,* 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), as recognized, for example, in *Clark v. Murphy,* 331 F.3d 1062, 1068 (9th Cir.2003).

any contrary judicial decisions such as *Cornejo–Barreto* I. [R.App. at 16–17, 19–22, and esp. 21.]

Respondent relies on the following provision of the REAL ID Act:

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment, except as provided in subsection (e) of this section.

8 U.S.C. § 1252(a)(4) ("Claims under the United Nations Convention"). Respondent reads this passage as expressly barring federal court review of Torture Convention claims in any proceeding whatsoever except for a petition for review in an immigration case in a court of appeals, and concludes that this bars judicial review of Petitioner's Torture Convention claims in the present action, *Cornejo–Barreto* I notwithstanding. Because this court is otherwise bound by the holding in *Cornejo–Barreto* I, Respondent's argument here is properly construed as an argument that the law as analyzed in *Cornejo–Barreto* I was changed by the REAL ID Act.

This statutory supersession argument is not persuasive as a ground for this court to reject the authority of *Cornejo–Barreto* I as controlling the jurisdictional issue in this case. Respondent's interpretation of 8 U.S.C. § 1252(a)(4) takes the passage out of context and ignores the remaining text of the REAL ID Act and its history. As a whole, 8 U.S.C. § 1252 is a statute governing procedures in immigration cases, and makes no mention of extradi-

tion. Section 1252 is part of Title 8, Chapter 12, of the United States Code, which covers immigration and nationality. Section 1252 is captioned "judicial review of orders of removal," and virtually every provision in § 1252, other than amended § 1252(a)(4), explicitly mentions orders of removal in immigration cases. Uncodified provisions of REAL ID Act section 106, on the effective date of amendments and related matters, also state that amendments in the REAL ID Act "shall apply to cases in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of enactment of this division." 119 Stat. 311, quoted in notes to 8 U.S.C.A. § 1252 (2005). Here, the simplest and most obvious construction would be to take amended § 1252(a)(4) as also referring to orders of removal in immigration cases, and as providing that, *in that context,* a petition for review in a court of appeals is the sole and exclusive means for judicial review of a claim under the Torture Convention.

This straightforward construction is plainly supported by the legislative history of the REAL ID Act. *See, e.g.,* House Conference Report 109–72 ("Conference Report" or "Conf. Rep."), pp. 172 ff., on Pub.L. 109–13, Section 106, in U.S.Code Congressional and Administrative News, 109th Congress, First Session, 2005, Volume 4, pp. 297 ff. The Conference Report states that Section 106 of the REAL ID Act "addresses a number of judicial anomalies improperly favoring criminal aliens that were created by court decisions interpreting changes to the INA [Immigration and Nationality Act] in 1996." Conf. Rep., p. 172. According to the Conference Report, since 1961, Congress had consistently provided that petitions for review in the courts of appeals should be the only procedure for judicial review of orders of deportation, exclusion, or removal, and that such orders could not be challenged in district

courts in habeas proceedings. *Id.* To the extent that district court habeas review of deportation orders had been available before 1996, Congress attempted to eliminate it in a provision contained in the Anti–Terrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. 104–132, 110 Stat. 1214. *Id.* Congress reasserted the principle that only courts of appeals could review a final removal order in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. 104–208, 110 Stat. 3546. *Id.*, p. 173. IIRIRA also provided that there would be no judicial review of a final order of removal against a criminal alien found removable because of having committed certain criminal offenses. *Id.*

The Conference Report goes on to discuss the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), in which the Court held that persons ordered removed as criminal aliens could obtain habeas corpus review of removal orders in the district courts under 28 U.S.C. § 2241. Conf. Rep., p. 173; *see also Singh v. Mukasey*, 533 F.3d 1103, 1105 (9th Cir.2008) (*citing St. Cyr*, 533 U.S. at 305–14, 121 S.Ct. 2271). According to the Conference Report, the basis for the *St. Cyr* decision was that Congress never explicitly mentioned 28 U.S.C. § 2241 when it eliminated judicial review of removal orders for criminal aliens, and did not provide any other forum for judicial review in such cases. Conf. Rep., p. 173 (*citing St. Cyr*, 533 U.S. at 298–300, and 312–14, 121 S.Ct. 2271). The Conference Report noted that the *St. Cyr* decision resulted in allowing more judicial review of removal orders for criminal aliens than for non-criminal aliens, and "created confusion in the federal courts as to what immigration issues can be reviewed, and which courts can review them. Conf. Rep., p. 174.

The Conference Report continues:

Section 106 of [the REAL ID Act] would address the anomalies created by *St. Cyr* and its progeny by restoring uniformity and order to the law. First, under this section, criminal aliens will have fewer opportunities to delay their removal, because they will not be able to obtain district court review in addition to circuit court review, and will not be able to ignore the thirty-day time limit on seeking review. Second, criminal aliens will not receive more judicial review than non-criminals. Under the amendments in section 106, all aliens will get review in the same forum—the courts of appeals. Third, by channeling review to the courts of appeals, section 106 will eliminate the problems of bifurcated and piecemeal litigation. Thus, the overall effect of the proposed reforms is to give every alien a fair opportunity to obtain judicial review while restoring order and common sense to the judicial review process.

Significantly, this section does not eliminate judicial review, but simply restores such review to its former settled forum prior to 1996. Under section 106, all aliens who are ordered removed by an immigration judge will be able to appeal to the BIA [Bureau of Immigration Appeals] and then raise constitutional and legal challenges in the courts of appeals. No alien, not even a criminal alien, will be deprived of judicial review of such claims. Unlike AEDPA and IIRIRA, which attempted to eliminate judicial review of criminal aliens' removal orders, section 106 would give every alien one day in the court of appeals, satisfying constitutional concerns. The Supreme Court has held that in supplanting the writ of habeas corpus with an alternative scheme, Congress need only provide a scheme which is an "adequate and effective" substitute for habeas corpus. *See Swain v. Pressley,*

430 U.S. 732 [372], 381 [97 S.Ct. 1224, 51 L.Ed.2d 411] (1977). Indeed, in *St. Cyr* itself, the Supreme Court recognized the "Congress could, without raising any constitutional questions, provide an adequate substitute through the courts of appeals." *St. Cyr*, 533 U.S. at 314 n. 38 [121 S.Ct. 2271] (emphasis added). By placing all review in the courts of appeals [the REAL ID Act] would provide an "adequate and effective" alternative to habeas corpus. *Id.*

. . . .

Moreover, section 106 would not preclude habeas review over challenges to detention that are independent of challenges to removal orders. Instead, the bill would eliminate habeas review only over challenges to removal orders.

Conf. Rep., pp. 174–75. Furthermore, with respect to the specific amended provision relied on by Respondent, now codified at 8 U.S.C. § 1252(a)(4) and quoted above, the Conference Report states:

Section 106(a)(1)(B) adds a new section 242(a)(4) to the INA. This provision will allow aliens in section 240 removal proceedings to seek review of "any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment" in the courts of appeal.

Conf. Rep., p. 176.

There is no mention of extradition proceedings in the REAL ID Act or in the Conference Report. The materials cited above in no way suggest that, by omitting an explicit reference to "removal orders" in one subsection of a statutory provision dealing with immigration removal cases, Congress meant silently and implicitly to reach out of the immigration context so as to bar bringing Torture Convention claims in extradition proceedings. The REAL ID Act has everything to do with immigration and nothing to do with extradition, and Respondent has offered no persuasive argument to the contrary.[21]

Accordingly, Respondent's argument based on the REAL ID Act does not establish that the binding Ninth Circuit precedent in *Cornejo–Barreto I* has been superseded by an act of Congress; this court is bound by that decision, and has jurisdiction to review Petitioner's claim under the APA and the Torture Convention.

---

**21.** Respondent appears to read both the FARR Act and the REAL ID Act as barring federal court review of Torture Convention claims in *any proceeding* other than a petition for review in an immigration case in a court of appeals. Such an extreme reading is contradicted by the history of another provision of the Torture Convention, Article 14, which requires each state party to ensure that its legal system provides torture victims an enforceable right to compensation. Like Article 3, Article 14 is not self-executing, but Article 14 was implemented in the United States by the Torture Victim Protection Act ("TVPA") of 1991, Pub.L. No. 102–256, 106 Stat. 73, codified in notes to 28 U.S.C. § 1350. *See, e.g., Calderon v. Reno*, 39 F.Supp.2d 943, 956–57 (N.D.Ill.1998). The TVPA provides a cause of action for damages for victims of torture under authority of a foreign nation. There is district court jurisdiction over a TVPA claim under 28 U.S.C. § 1350, the Alien Tort Statute ("ATS"), providing jurisdiction for a civil action by an alien for a tort "committed in violation of the law of nations or a treaty of the United States." Neither the FARR Act of 1998 nor the REAL ID Act of 2005 barred further civil actions in the district courts under the TVPA and the ATS; on the contrary, such actions continue to be litigated. *See, e.g., Sosa v. Alvarez–Machain*, 542 U.S. 692, 728, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004) (TVPA established unambiguous modern basis for private right of action for torture claim in federal court under ATS jurisdiction); *Arce v. Garcia*, 434 F.3d 1254, 1261–62 (11th Cir. 2006) (Congress enacted TVPA to carry out United States obligations under United Nations Charter and other international agreements; TVPA provides civil cause of action in United States Courts for torture committed abroad).

### E. CONCLUSIONS ON JURISDICTION OVER THE APA CLAIM AND ORDER REGARDING FURTHER PROCEEDINGS

Although the parties have raised a number of complicated issues, this court's resolution of Respondent's application to dismiss the present petition is, finally, a simple matter. Petitioner seeks habeas corpus relief on a claim that he is in custody illegally because the Secretary acted arbitrarily under the APA in disregard of her duty under the FARR Act and the Torture Convention not to surrender an extraditee likely to tortured. Respondent has argued that this court does not have jurisdiction to review such a claim; however, the Ninth Circuit has held, in *Cornejo–Barreto* I, that the district courts have such jurisdiction, and that holding is good law and binding on this court. Respondent has not shown that the holding in *Cornejo–Barreto* I has been invalidated by the Supreme Court's decision in *Munaf* or superseded by the REAL ID Act. Therefore, this court should now explicitly decide that it has jurisdiction to review Petitioner's claim under the APA and the

Torture Convention, and should deny Respondent's motion to dismiss and exercise its jurisdiction to review APA Petitioner's claim.[22]

■■ Given that this court has jurisdiction, under the habeas statute, to review Petitioner's claim as stated under the APA, the FARR Act, and the Torture Convention, the next issue is the scope of such review, which is highly deferential,[23] and the nature of the evidence required for meaningful review. At present, the only relevant evidence in the record appears to be the declarations, supplied by respondent, that attest to procedures the State Department generally follows in deciding whether to surrender a fugitive certified as extraditable who states a claim under the Torture Convention. *See, e.g.,* Declaration of Clifton M. Johnson, exhibit to Respondent' opposition to Petitioner's bail motion (docket no. 33, filed January 5, 2009). Such evidence is not sufficient to establish what the Secretary's decision in a specific case was based on, or whether that decision was arbitrary. On the other hand, Respondent argues that the full administrative record presented to the Secretary

---

22. Petitioner also asserts claims that the Secretary's decision to surrender him violated either procedural or substantive protections of the Due Process Clause of the Fifth Amendment, and Respondent has moved to dismiss those claims as without merit. Attempting to decide these issues at this time and on the present record is unnecessary and would be inefficient. If the court has jurisdiction over the APA claim, Respondent's motion to dismiss for lack of jurisdiction must be denied. Completion of the record and any additional briefing on that claim may clarify whether alternatively stating a Torture Convention claim as a violation of procedural or substantive due process is possible or necessary. Speculation on those issues would only further delay decision on the basic jurisdictional issue standing in the way of expeditious litigation in this action. Therefore, the court should not reach Petitioner's due process claims at this time.

23. Under the APA, review of agency determinations is limited to whether an agency's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See City of Los Angeles v. U.S. Dep't of Commerce,* 307 F.3d 859, 874 (9th Cir.2002) (*quoting* 5 U.S.C. § 706(2)(A)). A court may only reverse under the arbitrary and capricious standard if an agency relied on impermissible factors, failed to consider an important aspect, gave an explanation for its decision running counter to the evidence before it or that is "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Environmental Defense Center, Inc. v. U.S.E.P.A.,* 344 F.3d 832, 858 n. 36 (9th Cir.2003) (*quoting Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)).

should not be revealed because that would interfere with the confidentiality necessary to the State Department's proper pursuit of its duty under the FARR Act and the Torture Convention and would implicate sensitive foreign relations issues to the detriment of the United States. While this argument may be somewhat overstated considering the delicate nature of many questions which the courts must regularly address in executing the judicial function and given the panoply of options available to maintain confidentiality, Respondent's underlying concerns are valid; and it is not at all clear at this stage of the proceedings that proper review of the Secretary's surrender decision under the APA would require disclosure of every document that might be considered part of the administrative record supporting that decision.

Accordingly, as the next step in these proceedings, the court should enter an order (1) directing Respondent to serve and file an answer addressing Petitioner's APA claim on its merits; (2) directing Respondent to produce evidence from the administrative record underlying the Secretary's decision to surrender Petitioner to the Philippines, sufficient to enable this court to determine whether the Secretary acted arbitrarily, capriciously, in abuse of discretion, or in violation of the law, in light of her duties under the Torture Convention, the FARR Act, and State Department regulations; and (3) directing that further proceedings be scheduled by the magistrate judge as required. *See* [Proposed] Order Accepting Report and Recommendation of United States Magistrate Judge, Denying Application to Dismiss Petition, and Ordering Further Proceedings.

### IV. *RECOMMENDATIONS*

For the reasons discussed above, the magistrate judge recommends that the court issue an order: (1) approving and accepting this Report and Recommendation; (2) denying Respondent's application to dismiss the second amended petition; and (3) order further proceedings as set forth above.